PEOPLE *v.* GARSKA.

1. CONSPIRACY—KNOWLEDGE OF ALL PARTICIPANTS AND OBJECTS.
   It is not necessary that each party to a conspiracy know all
   the conspirators or participate in all the objects of the con-
   spiracy.

2. SAME—ADVENT INTO CONSPIRACY AFTER FORMATION.
   One who joins a conspiracy after it has been formed is as
   guilty as though he were an original conspirator.

3. CRIMINAL LAW—CONSPIRACY—SEPARATE TRIALS—DISCRETION OF
   COURT.
   Under record presented in prosecution of public officers and
   others for conspiracy to obstruct justice by enabling the opera-
   tion of various illegal enterprises, the granting of a separate
   trial to appellant, a village president, because of alleged dif-
   ference in duration and scope of conspiracy charged against
   him from that charged against other defendants was a matter
   of discretion for the trial court (3 Comp. Laws 1929, § 17298).

4. SAME—CONSPIRACY—TESTIMONY STRICKEN AS TO ONE DEFENDANT.
   In prosecution of certain county officers, a village president and
   others for conspiracy to obstruct justice, where testimony by
   witness that he had had a conversation with two defendants
   wherein he was told they had paid protection money to de-
   fendant village president was received but later ordered
   stricken by court insofar as such defendant was concerned
   and jury instructed so to consider it, the rights of such de-
   fendant were adequately protected.

5. SAME—CONSPIRACY—EVIDENCE—PREJUDICE.
   Testimony of chief of village police, given in prosecution of
   village president and two police officers for conspiracy to ob-
   struct justice, as to raids on various illegal enterprises, which
   was directed against all three above-named officers, *held*, not
   prejudicial.

6. SAME—CONSPIRACY—CONSTRUCTION. OF VILLAGE CHARTER—QUESTION FOR COURT.

In prosecution of various public officers, including defendant village president, for conspiracy to obstruct justice, refusal of trial court to receive testimony of attorney who drafted unambiguous provisions of village charter imposing duties and powers upon village president was proper, as the interpretation of such provisions was one of law for the court and not for jury on opinion testimony and a village president is presumed to have known the law.

7. SAME—CONSPIRACY—EVIDENCE OF ILL-FEELING ON PART OF WITNESS.

In prosecution for conspiracy to obstruct justice, restriction of appellant's explanation of transaction with a codefendant, an operator of a handbook, relative to operations of a certain corporation in which they were associated, so as to show merely that settlement of a claim made by the widow of another handbook operator against such corporation with reference to her late husband's investment therein resulted in ill feeling on her part and not permitting its use for the purpose of impeaching her testimony connecting appellant with handbook formerly owned by her husband *held,* not error.

8. SAME—DEFENDANT AS WITNESS—CROSS-EXAMINATION—WAIVER OF CONSTITUTIONAL PRIVILEGE.

A defendant who voluntarily takes the witness stand in a criminal case waives the constitutional privilege against self-incriminating questions and thereby subjects himself to cross-examination the same as any other person and it is then proper to question him regarding refusal to answer claimed incriminating questions in another proceeding (Const. 1908, art. 2, § 16).

9. SAME—CONSPIRACY—SUFFICIENCY OF TESTIMONY.

Under record in prosecution for conspiracy to obstruct justice containing testimony sufficient to enable the jury to find appellant guilty as charged, trial court committed no error in denying his motion for a directed verdict at the close of the people's case and submitting the case to the jury.

10. CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.

A conspiracy may be established by circumstantial evidence.

11. CRIMINAL LAW—CONSPIRACY—GREAT WEIGHT OF EVIDENCE.

Verdict of jury convicting village president and others in prosecution for conspiracy to obstruct justice *held,* not against the great weight of the evidence.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted June 11, 1942. (Docket No. 60, Calendar No. 41,756.) Decided November 24, 1942.

Alfred J. Garska was convicted of conspiracy to obstruct justice. Affirmed.

*Fred R. Walker,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Thomas A. Kenney,* Assistant Attorney General, and *Chester P. O'Hara,* Special Prosecuting Attorney, for the people.

BUSHNELL, J.    Alfred J. Garska, president of the village of Grosse Pointe Park, was convicted on the charge that he, being a public and executive officer of the village, and being engaged in keeping or maintaining a handbook wherein bets could be made upon horse races and wherein other gambling games were carried on, did knowingly conspire with August Bamberg, Gustave Pines, Samuel W. Block, and other persons to obstruct justice by wilfully and corruptly assisting and enabling the keeping or maintaining of these illegal activities, and by procuring the wilful, intentional and corrupt failure, omission and neglect on the part of Thomas C. Wilcox (sheriff), Carl Staebler (deputy sheriff), Bernard McGrath (undersheriff), Duncan C. McCrea (prosecuting attorney), Harry Colburn (deputy sheriff and chief investigator for the prosecuting attorney) and others in the performance of their respective official duties between January 2, 1935, and March 1, 1940.

Testimony was introduced showing that three handbooks had been operating in Grosse Pointe

Park, one of which, located on Jefferson avenue at Barrington, was owned and operated by Jack Woods. Woods' widow testified that on the day of Woods' death, March 22, 1938, Garska, whom she had known for at least 30 years, called and offered her $5,000 for this handbook. Although at first she wanted $7,500, she later told Garska he could have the place for $5,000. On Wednesday of the following week, Gorman, who had been Woods' former manager for about 10 years and whom she had seen on other occasions with Garska, paid her $5,000 for Woods' gambling establishment, and she signed a bill of sale.

August Bamberg, who lived in Grosse Pointe Park for about 20 years, testified that a few days after Woods' death he asked Garska to get him a job in the Woods handbook. At first Garska disclaimed any knowledge of the existence of Woods' place, but after asking a number of questions about the continuance of this handbook, Garska offered him a job at $60 a week and 10 per cent. to represent him as "a kind of a watchdog." Garska said that he would talk things over with Gorman who, according to Bamberg, was the logical man to operate the place. Later Gorman told Bamberg that the place would be operated on the basis of 35 per cent. to himself, 10 per cent. to Bamberg, and 55 per cent. to Garska. Bamberg thereafter paid money to Garska in the percentage agreed upon. Gorman's interest was subsequently increased to 50 per cent., Bamberg's to 15 per cent., plus a salary of $75 per week, and Garska's reduced to 35 per cent.

Bamberg also testified in considerable detail regarding the operation of the handbook, stating that there was deducted from its receipts $275 a month for pay-off purposes, which was handled by Gorman and "kept the lights going and took care of the lion tamers." On one occasion Bamberg took a roll of

money, under the instructions of Gorman, to Frank Chism, a codefendant who operated another Grosse Pointe Park handbook in partnership with codefendant Victor Otto. Gorman told Bamberg that this was the monthly protection money and that $150 went to the sheriff and $125 to the prosecutor.

According to Block, a self-confessed protection money collector for codefendant Colburn of the prosecutor's office, the money from the three handbooks in Grosse Pointe Park was collected by Woods and, after his death, by Lewis Elliott who operated another Grosse Pointe Park handbook in partnership with codefendant Clyde Stambaugh. James Drysdale, who was chief of police of the village most of the 13 years that Garska was president, testified that there were only three handbooks in the village and that he closed other handbooks on Garska's orders whenever they attempted to open, but that he never interfered with these three handbooks.

The so-called Woods handbook employed six ticket writers, three blackjack dealers, a doorman, a cashier, and a boardman, and had a week-day take of $1,400 to $1,700, and on Saturdays as high as $3,000. The handbook paid $70 a week in 1938, and $80 a week in 1939 to the Consolidated Service for broadcasting race results. Police officers of the village cashed checks in the handbook and bet on the horses with other customers.

Garska took the stand in his own behalf and denied having any interest in any handbook. He said that he had known Bamberg for 12 years and had first met Gorman at the Woods home on the occasion of Woods' death, but he denied any relations with either of them. He claimed he never discussed Woods' affairs with his widow, but later admitted calling at the Woods home on the day of his death, where he first learned from Gorman and Mrs. Woods

that her husband had operated a handbook. He also admitted that some two or three months after the funeral he had a discussion with Mrs. Woods about some business dealings between her husband and himself.

Some of the questions raised by defendant Garska were raised in the case of *People* v. *McCrea, ante,* 213, decided herewith. These relate to the unauthorized examination by the jury in the jury room of part of the transcript of testimony taken at the trial; the rulings of the court regarding the use of the minutes of the grand jury for the purpose of refreshing the recollection of witnesses and for the purpose of impeaching them; the limitations imposed by the court on the use of such minutes by the defense, and the court's ruling on the right of this defendant to examine other portions of the minutes for the purpose of cross-examining witnesses as to contradictory testimony given before the grand jury.

Garska also assigns as error the admission of testimony relative to the statements of a conspirator not made in his presence or in furtherance of the conspiracy with which he was charged and the admission of testimony regarding the acts of a stranger to the conspiracy. This testimony ·dealt with statements made by Elik Gell and letters written by Janet McDonald, both having died prior to the trial. These matters are discussed in the opinion rendered herewith in the case of *People* v. *Wilcox, ante,* 287.

Our opinions in *People* v. *McCrea* and *People* v. *Wilcox* fully discuss the foregoing questions, and our determination in those cases is controlling here.

Garska urges that the trial judge erred in not granting him a separate trial and contends that the charge against him was entirely separate and dis-

tinct from that against his codefendants because the conspiracy to which he was said to be a party did not come into existence until 1938, and because a conspiracy to operate and protect handbooks in the village of Grosse Pointe Park could not possibly extend over the entire county.

It was not necessary that Garska should know all the conspirators or participate in all the objects of the conspiracy. One who joins a conspiracy after it has been formed is as guilty as though he were an original conspirator. *Allen* v. *United States* (C. C. A.), 4 Fed. (2d) 688, and *Marino* v. *United States* (C. C. A.), 91 Fed. (2d) 691 (113 A. L. R. 975). See, also, *People* v. *Tenerowicz,* 266 Mich. 276.

The granting of a separate trial in the light of the record presented was a matter of discretion for the trial judge. *People* v. *O'Hara,* 278 Mich. 281, and 3 Comp. Laws 1929, § 17298 (Stat. Ann. § 28.1028).

Garska further contends that it was error to receive testimony as to the derelictions of duty on the part of persons not named as conspirators or codefendants, and that such evidence is not admissible against him because he was not shown to be connected with them. In a trial, such as shown by this record, considerable testimony was necessarily presented which had no bearing upon the guilt or innocence of defendant Garska, but was presented in order to show the existence of the conspiracy and its details as affecting the guilt of other codefendants. Attention is directed to what we say about such testimony in the Wilcox opinion.

Garska complains of the admission of William Anderson's testimony regarding a conversation with Elliott and Stambaugh, wherein he was told they were partners in a handbook in Grosse Pointe Park, and that they paid protection money to Garska while

he was president of the village. Although no objection was made at the time, later Garska moved to strike this testimony and the court ruled that the jury should be instructed that Anderson's testimony in this respect was not binding upon Garska, suggesting that a proper request to charge be presented. Garska's counsel presented a request, worded as follows:

"53. I charge you that the testimony of William Anderson with reference to alleged statements of a defendant by the name of Stambaugh and his alleged payments for protection cannot in any way be considered by you as testimony against Alfred J. Garska, and any verdict returned by you which was influenced by or affected by the consideration of such testimony must be set aside and held for naught."

This charge was not given by the court in the language proposed, but the jury was instructed during the argument of the assistant attorney general as follows:

"A motion was made in your absence, members of the jury, with reference to this particular conversation, and it was the ruling of the court at that time that the same is not binding as against the respondent Alfred Garska."

We do not deem it necessary to include in this opinion all that was said by respective counsel and the court on this subject. It is sufficient to say that defendant's rights in this respect were adequately protected.

Garska claims that the testimony of James Drysdale, chief of police of the village, which was received over his objection as to raids on handbooks, et cetera., in Grosse Pointe Park, was highly prejudicial. This testimony was directed against two

other defendants who were members of the Grosse Pointe Park police department, as well as against Garska, and covered matters that were the proper subject of inquiry. The objections shown in the record have more to do with the argumentative nature of the people's questions than the claimed prejudicial nature of the inquiry. The testimony of the chief of police was not prejudicial.

Garska was the president of the village and, under its charter, had certain duties imposed upon him. The charter states in chapter 5, § 3:

"He shall supervise the affairs of the village, and shall see that the laws regulating the village and all ordinances and regulations of the village commission be enforced.     *     *     *

"(4) He shall be a conservator of peace and shall exercise within the village the powers conferred upon sheriffs to suppress disorder, and shall have authority to command the assistance of all able-bodied citizens to aid in the enforcement of the ordinances of the commission and to suppress riots and disorderly conduct; and shall perform generally all such duties as are or may be prescribed by the ordinances of the village, and by this charter."

Chapter 14, § 9, reads:

"The village president and members of the village commission are ex-officio members of the police department of the village of Grosse Pointe Park with full powers of a police or patrolman."

The court did not err in refusing to take the testimony of Julius Berns, an attorney who drafted the village charter and acted generally in the capacity of legal advisor, for the purpose of explaining the meaning of the charter and Garska's powers and responsibilities. There is no ambiguity in the provisions of the charter pertaining to the duties of the

village president. Garska's claimed understanding of the charter was inadmissible. He is presumed to have known the law. The trial judge correctly held that the interpretation of such provisions was a question of law for the court and not a question to be determined by the jury on opinion testimony.

Garska claims the court improperly restricted his explanation regarding a transaction with Victor Otto, a codefendant and operator of another Grosse Pointe Park handbook. Otto and Garska were associated in the International Vanadium Corporation and Garska was at one time its general manager. Following the death of Woods, his widow had some dispute with Garska over her husband's investment in this corporation and a settlement agreement was entered into, whereby Garska paid Mrs. Woods $4,000 for a full and complete release of a claimed indebtedness of $6,250. The court ruled that Garska could go into this matter only to show ill feeling on the part of Mrs. Woods, and not to impeach her testimony. The court did not err in so restricting the scope of this inquiry.

Garska assigns error regarding questions put to him concerning his refusal to answer claimed incriminating questions at the McCrea ouster hearing before Judge Hollander. The situation thus presented is no different from that discussed in the *McCrea Case* regarding McCrea's testimony before the grand jury, and what the court said there is controlling here. Having submitted himself to cross-examination by taking the witness stand, it was proper to question Garska regarding his refusal to answer claimed incriminating questions in another proceeding.

Garska claims the court erred in denying his motion for a directed verdict at the close of the people's case and in submitting the case to the jury. The

testimony of Bamberg and other witnesses, and Garska's denials, presented questions of fact for consideration by the jury.    The record contains sufficient testimony from which the jury could find Garska guilty as charged.    A conspiracy may be established by circumstantial evidence.    *People* v. *Tenerowicz,* 266 Mich. 276, and *People* v. *Fields,* 288 Mich. 166.    It cannot be said that the verdict of the jury is against the great weight of the evidence.

We find no reversible error.    Judgment is affirmed.

Chandler, C. J., and North, Starr, Butzel, and Sharpe, JJ., concurred.    Boyles and Wiest, JJ., did not sit.