PEOPLE *v.* RANNEY.

1. CONSPIRACY—BASEBALL POOL—LOTTERIES—JURISDICTION OF CIRCUIT COURT.

Circuit court of Wayne county is admitted to have had jurisdiction to try prosecution of city of Detroit police officers for conspiracy to obstruct justice by permitting the maintenance of an illegal enterprise, known as baseball pool, where tickets used in connection therewith were sold throughout the county as well as within the city, notwithstanding fact that appellants, two of the conspirators, committed acts only within the city.

2. SAME—JURISDICTION—OVERT ACTS.

A court having jurisdiction of place where any overt acts in connection with a conspiracy to obstruct justice took place has jurisdiction to try defendants charged with such conspiracy.

3. SAME—OVERT ACTS BY ONE EVIDENCE AGAINST ALL.

Whatever is said or done by any one of several persons engaged in one common unlawful enterprise in the prosecution thereof or while it is still in progress is evidence against all of the parties to it.

4. SAME—KNOWLEDGE OF ALL PARTICIPANTS AND OBJECTS.

It is not necessary that each party to a conspiracy know all the conspirators or participate in all the objects of the conspiracy.

5. SAME—ADVENT INTO CONSPIRACY AFTER FORMATION.

One who joins a conspiracy after it has been formed is as guilty as though he were an original conspirator.

6. SAME—NEW TRIAL—GREAT WEIGHT OF EVIDENCE.

Denial of motions for new trial in prosecution for conspiracy to obstruct justice by permitting the maintenance of an illegal enterprise known as a baseball pool because verdicts were alleged to be contrary to the great weight of the evidence was not error where there was evidence connecting defendant police detectives with accepting money from pool operators for purpose of protecting operation of pool, the weight of such testimony being for the sole consideration of the jury.

7. CRIMINAL LAW—EXAMINATION AND CROSS-EXAMINATION OF WITNESSES—USE OF UNIDENTIFIED DOCUMENTS.

Special prosecutor's use of document to frame questions either on direct or on cross-examination of a witness in prosecution of police detectives and others for conspiracy to obstruct justice without introducing such document in evidence or identifying it *held*, not to have constituted error.

8. SAME—GRAND-JURY TESTIMONY—REFRESHING RECOLLECTION—LAYING FOUNDATION.

It was not reversible error for trial court in a prosecution for crime to permit the prosecution to use a transcript of grand-jury testimony for the purpose of refreshing the recollection of witnesses or for the purpose of laying a foundation for questions to be asked the witness.

Appeal from Wayne; Pugsley (Earl C.), J. Submitted January 14, 1943. (Docket No. 99, Calendar No. 42,069.) Decided February 23, 1943. Rehearing denied April 6, 1943.

Clyde Ranney and James Dooley were convicted of conspiracy to obstruct justice. Affirmed.

*Francis J. McDonald,* for appellants.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Thomas A. Kenney,* Assistant Attorney General, and *Chester P. O'Hara,* Special Prosecuting Attorney, for the people.

SHARPE, J.  Defendants Clyde Ranney and James Dooley were convicted of conspiring with others to set up, promote and manage a baseball pool known as National Sports Junior within the county of Wayne and State of Michigan.

The record shows that Leo J. (Jack) Gagnon, Albert J. Schell and John Sidick, between March 15, 1935, and September 15, 1939, operated an illegal enterprise, being a lottery known as the National Sports Junior.  Such a lottery is more commonly known as a baseball pool.  Tickets were sold to various people by the operators of the lottery and prizes were given to the holders of certain lucky numbers.  In 1939, between the opening of the baseball season in April and the closing of the pool in August, there were more than a million tickets sold, bringing in a revenue of more than a half million dollars.  Approximately one-half of this amount was paid out in prizes.  The information named Duncan C. McCrea, prosecuting attorney of Wayne county, Harry Colburn, chief investigator, Fred W. Frahm, superintendent of police of the city of Detroit, Clyde Ranney and James Dooley, police detectives assigned to the special investigation squad, together with other police officers, as public officials, with eight other named defendants with the operation of the pool.  The record shows that Leo J. Gagnon, one of the operators of the pool, had trouble with people who claimed to be prize winners and who presented fictitious tickets to support their

claims to the prize money. He received assistance from defendants Ranney and Dooley in adjusting these claims.

In 1937, Gagnon met defendants Ranney and Dooley with other defendants in a beer garden and as a result of this meeting gave the men $40 or $50 and told them they could expect more money at a later date. He later paid money to both defendants, but Ranney collected most of the money. In 1938, Gagnon had trouble with four men at his home over prize money and he called Ranney, who came and searched the men for guns. In 1939, Gagnon again had trouble with a holder of a fake ticket. He again called defendant Ranney and the matter was adjusted. It later developed that Gagnon paid defendants a certain amount each week. Ranney admitted that he knew Gagnon was connected with a baseball pool. Ranney made no investigation of any kind to determine whether Gagnon was operating a baseball pool in the city of Detroit, but did report to the vice squad of the Detroit police department the operations of other baseball pools. After conviction, defendants made motions for new trials which were denied.

Defendants appeal and contend that the circuit court of Wayne county lacked jurisdiction to hear the cause; that the verdicts were contrary to the great weight of evidence; that the trial court erred in permitting the special prosecutor to cross-examine defendant Dooley from a document which he neglected to identify; and that the court erred in permitting the special prosecutor to confront defendant Dooley with his grand-jury testimony when the same was in harmony with his testimony at the trial.

It is admitted by defendants that the Wayne county circuit court had jurisdiction to try the con-

spiracy as charged in count one for the reason that tickets used in connection with the baseball pool were sold outside the city of Detroit as well as in the city of Detroit. But it is contended that as police officers of the city of Detroit, the failure, if any, of defendants to perform their official duties occurred in the city and they could not be charged with failure to enforce the laws outside the city. Therefore, the recorder's court had sole jurisdiction of the crime charged in count 8.

The record discloses that this so-called baseball pool operated in all parts of Wayne county during the period covered by the information.

In *People* v. *Pitcher,* 15 Mich. 397, 403, we said:

"The general rule is well-settled that, where several persons are engaged in one common unlawful enterprise, whatever is said or done by any one of them in the prosecution of the common enterprise, or while it is still in progress, is evidence against all the parties to it."

In *People* v. *Pettijohn,* 283 Mich. 108, defendant was convicted in the recorder's court on a charge of entering into a conspiracy to kill and murder William Voisine. The evidence showed that a part of the planning to commit the murder took place in the city of Detroit and a part of it took place in the village of Ecorse. We there said (p. 114):

"An overt act in connection with the conspiracy thus took place in Detroit and defendants could have been tried by either the recorder's court for the city of Detroit or Wayne circuit court."

In *People* v. *Garska,* 303 Mich. 313, Alfred J. Garska was convicted of the crime of conspiracy to obstruct justice in Wayne county. The activities of Garska as president of the village of Grosse Pointe

Park were confined to such village limits. We there said (p. 319):

"It was not necessary that Garska should know all the conspirators or participate in all the objects of the conspiracy. One who joins a conspiracy after it has been formed is as guilty as though he were an original conspirator."

In the case at bar the overt acts of defendants were committed in the city of Detroit, but such acts were only a part of the general conspiracy which was county wide in scope. By virtue of the above authority, the circuit court of Wayne county had jurisdiction to hear the cause.

It is next urged that the trial court was in error in denying defendants' motions for a new trial because the verdicts were contrary to the great weight of the evidence. It is unnecessary to narrate the testimony of the owners or operators of the illegal business. It is sufficient to say that there was testimony connecting both defendants with accepting money from Gagnon during the years 1937, 1938, and 1939 for the purpose of protecting Gagnon in the operation of his baseball pool. The weight to be given to the testimony produced by the people was for the sole consideration of the jury. We cannot say that its verdicts were against the great weight of the evidence. There is evidence, if believed by the jury, to warrant a conviction in this case.

During the trial of the cause, the special prosecutor cross-examined defendant Dooley from a document which he failed to introduce in evidence or to identify. It appears that the only use made of this document was to frame questions either on direct or on cross-examination of a witness. In our opinion

there was no error committed by the special prosecutor in the use made of the document.

It is also urged that it was error to permit the special prosecutor to confront defendant Dooley with his grand-jury testimony when the same was in harmony with his testimony in the present trial.

In *People* v. *McCrea,* 303 Mich. 213, 244, we said:

"The prosecution's right to use a transcript of the grand-jury testimony for the purpose of refreshing the recollection of witnesses or for impeachment purposes is admitted by defendant McCrea and has been repeatedly recognized in this State."

We are convinced that no harm occurred to the cause of the defendants by the use made of the grand-jury testimony. Its use may have been for the purpose of refreshing the recollection of the witness or it may have been used for the purpose of properly laying a foundation for questions to be asked the witness. In either case such use was permissible.

We find no error in the case and the judgments are affirmed.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.