PEOPLE v MEREDITH (ON REMAND)

Docket Nos. 173161, 173162. Submitted November 1, 1994, at Detroit. Decided March 20, 1995, at 9:50 A.M. Leave to appeal sought.

James D. Meredith, Angela L. Barnes, Walter G. Moore, and Cecil D. Peoples were indicted by a grand jury in Oakland County of conspiracy to deliver 650 or more grams of cocaine. Following a preliminary examination of the charges against Meredith, Barnes, and Moore, the 52nd District Court, Ralph H. Nelson, J., dismissed the charges against those defendants, finding that venue did not lie in Oakland County and further finding that, if venue had been in Oakland County, there was sufficient evidence to bind over Meredith, but not Barnes and Moore. The prosecution appealed. When Peoples was apprehended, the district court, on the basis of the record created in the previous preliminary examination, dismissed the charge on the basis of lack of proper venue, although finding that there was sufficient evidence to bind over Peoples. The prosecution appealed. The appeals were consolidated. The Oakland Circuit Court, Barry L. Howard, J., affirmed. The prosecution sought leave to appeal, which the Court of Appeals denied. The Supreme Court, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration as on leave granted. 444 Mich 955 (1994).

On remand, the Court of Appeals *held:*

1. Venue for a criminal conspiracy charge lies in any county in which an overt act in furtherance of the conspiracy is committed. The transporting of illegal drugs from one group of persons involved in a conspiracy to deliver illegal drugs to another group of persons involved in the conspiracy is an overt act in furtherance of the conspiracy. Accordingly, the district court abused its discretion in holding that the transporting of cocaine from Moore in Detroit to Meredith, Barnes, and Peo-

REFERENCES

Am Jur 2d, Conspiracy §§ 10, 14, 21.

Construction and effect of statutes providing for venue of criminal case in either county, where crime is committed partly in one county and partly in another. 30 ALR2d 1265.

ples in Saginaw through Oakland County was insufficient to create venue for the conspiracy charge in Oakland County.

2. A conspirator need not have knowledge of the extent of the conspiratorial enterprise or of the identity of all the coconspirators. A person is guilty of conspiracy by cooperating to further the object of the conspiracy, knowing that there is a conspiracy and that others are involved in that conspiracy. The district court abused its discretion in finding that there was insufficient evidence to establish that Moore was involved in a conspiracy with the others to deliver the cocaine. There was evidence adduced at the preliminary examination to establish probable cause to believe that Moore, through his prior dealings, was aware of the intent of Meredith and Peoples to distribute and deliver the cocaine and was thus part of that conspiracy to deliver cocaine.

3. There was sufficient evidence adduced at the preliminary examination to establish probable cause to believe that Barnes was involved in the conspiracy. Accordingly, it was an abuse of discretion for the district court to find that there was not sufficient evidence to order her bound over on the conspiracy charge.

Reversed and remanded for arraignment.

HOLBROOK, JR., J., dissenting, stated that the district court's determination that venue of the conspiracy charge did not lie in Oakland County should be affirmed, because the mere fact of travel through a county with the fruits of the conspiracy, without more, does not constitute an overt act in furtherance of a conspiracy formed in another county.

1. VENUE — CONSPIRACY — CONTROLLED SUBSTANCES.

Venue for a criminal conspiracy charge lies in any county in which an overt act in furtherance of the conspiracy is committed; the transporting of illegal drugs from one group of persons involved in a conspiracy to deliver illegal drugs to another group of persons involved in the conspiracy is an overt act in furtherance of the conspiracy.

2. CONSPIRACY — KNOWLEDGE OF THE CONSPIRACY — IDENTITY OF COCONSPIRATORS.

A conspirator need not have knowledge of the extent of the conspiratorial enterprise or of the identity of all the coconspirators; a person is guilty of conspiracy by cooperating to further the object of the conspiracy, knowing that there is a conspiracy and that others are involved in that conspiracy.

*Frank J. Kelley*, Attorney General, *Thomas L.*

*Casey,* Solcitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *John S. Pallas,* Assistant Prosecuting Attorney, for the people.

*Ronald A. Pentz,* for James D. Meredith.

*Kenneth F. Sasse,* for Walter G. Moore.

*Jeffrey R. Saunders,* for Angela L. Barnes.

*William Mitchell, III,* for Cecil D. Peoples.

### ON REMAND

Before: TAYLOR, P.J., and HOLBROOK, JR., and M. E. DODGE,* JJ.

TAYLOR, P.J. On remand from the Michigan Supreme Court, we consider the prosecutor's appeal as on leave granted. *People v Meredith,* 444 Mich 955 (1994). The prosecutor appeals from the circuit court's order affirming the district court's order dismissing conspiracy charges against defendants on the basis of improper venue. We reverse and remand.

Defendants were indicted by an Oakland County grand jury on charges of conspiracy to deliver 650 or more grams of cocaine, MCL 750.157a; MSA 28.354(1); MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Defendants Meredith, Barnes, and Moore were apprehended while defendant Peoples initially remained at large.

At a preliminary examination held for Meredith, Barnes, and Moore, defense counsel made a joint motion to change venue to either Saginaw County

---

* Circuit judge, sitting on the Court of Appeals by assignment.

or Wayne County. The court deferred ruling on the motion until the conclusion of proofs.

Officer David Chase of the Auburn Hills Police Department testified that on August 23, 1991, he stopped a speeding vehicle as it traveled northbound on I-75 in Oakland County. The female driver identified herself as Lucretia Hodges, but was unable to produce identification or a driver's license. Officer Chase arrested the woman and searched the vehicle incident to the arrest. He discovered a brown paper bag containing two plastic bags of a white powdery substance in brick form that was later identified as cocaine.

Lavinia Peoples testified that she was the person stopped and arrested by Officer Chase. She stated that she had obtained the cocaine in Detroit from "Walt," who was identified as defendant Moore, and another person known as "Smoot." Ms. Peoples testified that she regularly traveled from Saginaw to Detroit to purchase cocaine for her cousin, Cecil Peoples, who would give her money to make the purchases. After arriving in Detroit she would call a beeper number. Shortly thereafter, Moore or Smoot, or both of them, would arrive, and together they would drive to another location where she would exchange the money for cocaine. She would then return to Saginaw via I-75 and deliver the cocaine to Cecil Peoples at a house belonging to his mother.

At the conclusion of proofs, the district court ruled that venue was improper in Oakland County because the evidence showed that the conspiracy was formed in Saginaw. The court reasoned that the act of driving through Oakland County did not in itself constitute a crime and that the act of driving through Oakland County was merely ancillary to the agreement. In orders entered on May 12, 1992, the district court dismissed the charges

against Meredith, Moore, and Barnes on grounds of improper venue. In addition, the district court found that, even if venue were proper in Oakland County, the evidence presented was insufficient to establish probable cause to believe that defendants Barnes and Moore were involved in the conspiracy.

Subsequently, defendant Cecil Peoples was arrested and appeared before the district court for a preliminary examination. Peoples stipulated the use of the testimony taken in the earlier preliminary examination and waived his right to cross-examine the witnesses. The district court found that venue was improper and, in an order entered on January 12, 1993, dismissed the conspiracy charge against Cecil Peoples.

On appeal, the prosecutor argues that the court clearly erred in determining that venue in Oakland County was improper. Contrary to the district court's conclusion, the prosecutor asserts that the law regarding conspiracy has not changed and that the trial of a conspiracy case may be had in any jurisdiction where an overt act in furtherance of the conspiracy took place. *People v Ranney,* 304 Mich 315, 319-320; 8 NW2d 80 (1943). The prosecutor claims that an overt act in furtherance of the conspiracy occurred in Oakland County because Lavinia Peoples drove through Oakland County on her way to and from Detroit to purchase cocaine for distribution in Saginaw. We agree.

There is a distinction between a prosecutor's obligation to establish proper venue and the obligation to establish the elements of the charged offense. On the one hand, to establish the statutory offense of criminal conspiracy, a prosecutor must show a combination or agreement, express or implied, between two or more persons, to commit

an illegal act or to commit a legal act in an illegal manner. MCL 750.157a; MSA 28.354(1); *People v Carter,* 415 Mich 558, 567; 330 NW2d 314 (1982), overruled in part on other grounds in *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). An overt act by the defendant is not required to prove a conspiracy, because the essence of the offense is the agreement itself. *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974); *People v Cotton,* 191 Mich App 377, 392-393; 478 NW2d 681 (1991).

On the other hand, while venue is a part of every criminal case that must be proven by the prosecutor, it is not an essential element of a crime. *People v Swift,* 188 Mich App 619, 620; 470 NW2d 491 (1991). In accordance with the common law, a conspiracy case can be prosecuted in any jurisdiction in which an overt act occurred in furtherance of the conspiracy. *Ranney, supra; People v Pettijohn,* 283 Mich 108, 114; 277 NW 193 (1938); *People v Arnold,* 46 Mich 268, 275; 9 NW 406 (1881). We can find no basis for the proposition that the law regarding venue changed in Michigan with the enactment of the conspiracy statute. Thus, consonant with the longstanding rule regarding flexibility of venue in criminal conspiracy cases, see *Carter, supra* at 568-569, n 4, we conclude that the common-law principle espoused in *Ranney, Pettijohn,* and *Arnold* remains viable: In a conspiracy case, venue is proper in any county in which an overt act was committed in furtherance of the conspiracy.

To establish proper venue in Oakland County, the prosecutor relies on MCL 762.8; MSA 28.851, which provides:

> Whenever a felony consists or is the culmination of two or more acts done in perpetration thereof, said felony may be prosecuted in any county in which any one of said acts was committed.

The prosecutor reasons that, because Lavinia Peoples' act of traveling through Oakland County was done in furtherance of the conspiracy, venue was proper in Oakland County. We agree.

This statute merely requires that a defendant commit at least one act of a multiple act felony in the prosecuting jurisdiction. In order to establish proper venue, it is not necessary that the act constitute an essential element of an offense. *People v Jones,* 159 Mich App 758, 761; 406 NW2d 843 (1987); *People v De Cair,* 23 Mich App 438, 441; 178 NW2d 830 (1970). Because this is a conspiracy case, we construe the term "act" in MCL 762.8; MSA 28.851 to mean "overt act" as that term of art is applied in such cases. In *Carter, supra* at 568, n 3 (citing the Model Penal Code, Comment, § 5.03, pp 96-97 [Tentative Draft No 10]) an overt act was defined as "any act, no matter how insignificant . . . ."

In this case, the evidence is clear that there was an overt act in furtherance of the conspiracy committed in Oakland County. Lavinia Peoples' act of driving through Oakland County in her journey between Saginaw and Detroit was an act in furtherance and perpetration of the conspiracy. *People v Kirby,* 42 Mich App 97, 99; 201 NW2d 355 (1972). Therefore, MCL 762.8; MSA 28.851 serves as the basis for placing venue in Oakland County and, specifically, in the 52nd District Court.

Because the district court's ruling concerning venue was erroneous as a matter of law, its dismissal of the charge against defendants Meredith and Peoples is reversed. The court expressly stated that, but for its ruling that venue in Oakland County was improper, it would have bound defendants Meredith and Peoples over to the circuit court as charged.

Our decision that venue in Oakland County is proper in this case requires us to address the second issue raised by the prosecutor in this appeal. With regard to defendants Moore and Barnes, the district court indicated that it would not have bound these two defendants over to the circuit court regardless of the propriety of venue in Oakland County. The prosecutor argues that the district court erred in determining that the evidence was insufficient to establish probable cause that defendants Moore and Barnes were participants in the conspiracy.

In assessing the circuit court's affirmance of the district court's decision with regard to probable cause on the part of Moore and Barnes, we must determine whether there has been an abuse of discretion on the part of the district court. *People v Cowley*, 174 Mich App 76, 79; 435 NW2d 458 (1989). The standard of review in testing for an abuse of discretion is narrow. *Id.*

> "In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." [*People v Talley*, 410 Mich 378, 387; 301 NW2d 809 (1981), citing *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).]

We conclude that the district court abused its discretion in determining that the evidence presented was insufficient to show probable cause with regard to Moore and Barnes.

Moore contends that the evidence shows, at most, a conspiracy in Detroit between him and "Smoot" to buy and sell cocaine. However, he asserts that the evidence does not establish the

one large conspiracy alleged in the indictment. He claims that the evidence shows merely a buyer-seller relationship between the members of the Saginaw conspiracy and "Smoot" and himself in Detroit. The district court agreed, holding that the evidence with regard to Moore did not show that he had the specific intent to help with the distribution. In particular, the court stated:

> There's no specific intent showing [that Moore] intended to help with the distribution. I have no doubt from the testimony, in my mind[,] that he knew when he was selling those amounts of cocaine to Miss Peoples to have delivered up to Saginaw, he knew that somebody else was going to cook it up and sell it on the street.

The essence of this position is that Moore did not have full knowledge of the conspiracy and, thus, could not have been part of the conspiratorial agreement. This position reflects an incorrect understanding of the law, causing an incorrect evaluation of the facts in this matter.

The law of conspiracy is codified in Michigan at MCL 750.157a; MSA 28.354(1), and in relevant part provides:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . .
>
> "The gist of the crime of conspiracy lies in the unlawful agreement." . . . The crime is complete upon formation of the agreement; in Michigan, it is not necessary to establish any overt act in furtherance of the conspiracy as a component of the crime. [*Carter, supra* at 568.]

In *People v Cooper,* 326 Mich 514, 521; 40 NW2d 708 (1950), aff'd on rehearing 328 Mich 159; 43

NW2d 310 (1950), the Supreme Court held that not
all coconspirators need have knowledge of the
extent of the conspiratorial enterprise:

> A person may be a party to a continuing con-
> spiracy by knowingly co-operating to further the
> object thereof. *People v Heidt* [312 Mich 629; 20
> NW2d 751 (1945)]. It is not necessary to a convic-
> tion for conspiracy that each defendant have
> knowledge of all of its ramifications. *People v
> DeLano,* 318 Mich 557 [28 NW2d 909 (1947)]. Nor
> is it necessary that one conspirator should know
> all of the conspirators or participate in all of the
> objects of the conspiracy. *People v Garska,* 303
> Mich 313 [6 NW2d 527 (1942)].

Even if some conspirators are not members from
the inception of the conspiracy, all are nonetheless
bound by the acts done in furtherance of the
conspiracy. *People v Taurianen,* 102 Mich App 17,
32; 300 NW2d 720 (1980).

Furthermore, in *People v Missouri,* 100 Mich
App 310, 343-346; 299 NW2d 346 (1980), this Court
held that where drug conspirators did not know
each other, a conspiracy could still exist where all
the individuals shared the knowledge that the
drugs involved were ultimately to be delivered for
consumption by street users. The Court also dis-
cussed the concept of a "chain conspiracy" and its
applicability to drug conspiracies:

> In fact, the evidence [in this case] makes out a
> "chain" conspiracy. In the seminal case on chain
> conspiracies, the Second Circuit Court of Appeals
> affirmed conspiracy convictions where narcotics
> smugglers sold to middlemen who, in turn, sold to
> retailers. *United States v Bruno,* 105 F2d 921 (CA
> 2, 1939), *rev'd on other grounds,* 308 US 287; 60 S
> Ct 198; 84 L Ed 257 (1939). See also *United States
> v Bynum,* 485 F2d 490, 495-496 (CA 2, 1973). Here,

although there were buyers and sellers along the
chain, all parties shared the knowledge that the
narcotics were to be ultimately delivered for con-
sumption by street users. All agreed to meet the
object—delivery—by fulfilling their agreements to
provide narcotics at various links along the chain
and by keeping Missouri out of jail. The crime of
conspiracy is based on the theory that where
individuals act in concert, their conduct is more
harmful to society than if one committed the
offense alone. This rationale is clearly called into
play in this case where Rodgers could not deliver
large amounts of narcotics without a reliable
source, and Missouri could not sell large amounts
of narcotics without a network of distributors mov-
ing the drugs to the ultimate users. [*Id.* at 343-
344.]

This reasoning is further amplified by the well-
stated holding in *Bruno,* as cited by this Court in
*Missouri*:

The evidence did not disclose any coöperation or
communication between the smugglers and either
group of retailers, or between the two groups of
retailers themselves; however, the smugglers knew
that the middlemen must sell to retailers, and the
retailers knew that the middlemen must buy of
importers of one sort or another. Thus, the con-
spirators at one end of the chain knew that the
unlawful business would not, and could not, stop
with their buyers; and those at the other end knew
that it had not begun with their sellers. That
being true, a jury might have found that all the
accused were embarked upon a venture, in all
parts of which each was a participant, and an
abettor in the sense that the success of that part
with which he was immediately concerned, was
dependent upon the success of the whole. [*Bruno,*
*supra* at 922.]

In this case, the evidence presented to the dis-

trict court at the preliminary examination established probable cause to believe that Moore was a vital link in the chain. According to the testimony of Ms. Peoples, Moore and "Smoot" were the conspiracy's source of cocaine. Cecil Peoples provided Ms. Peoples with a beeper number that, when dialed, would shortly thereafter result in the appearance of Moore, who was sometimes accompanied by Smoot. When Moore and Smoot arrived, Ms. Peoples would pay them for the cocaine.

The extent of Moore's participation in the conspiracy is also illustrated by Ms. Peoples' testimony concerning her prior arrest while she was on her way to Detroit to purchase $12,500 worth of cocaine. After being arrested by a Troy police officer, she "bonded out" and called Cecil Peoples, who was presumably in Saginaw at the time. However, Moore and Smoot picked Ms. Peoples up from the police station in Troy and drove her back to Saginaw with the cocaine she had been sent to Detroit to purchase. Moore's multiple sales of large amounts of cocaine to Ms. Peoples, coupled with his assistance in getting Ms. Peoples out of jail, bolsters the obvious conclusion that he had a stake in the activities of defendants Meredith and Peoples. See *United States v Sin Nagh Fong,* 490 F2d 527 (CA 9, 1974). Furthermore, as noted in *Missouri,* a drug source, such as Moore, cannot "sell large amounts of narcotics without a network of distributors moving the drugs to the ultimate users." *Missouri, supra* at 344.[1]

---

[1] See *United States v Kearney,* 560 F2d 1358, 1362 (CA 9, 1977), cert den 434 US 971 (1977), where, on the facts of that case, the court held:

> The government proved that each defendant knew, or had reason to know, that others were involved in a broad project for the illegal transportation and distribution of narcotics, and that his benefits were probably dependent upon the success of the

As the opinion in *United States v Rojas*, 537 F2d 216, 221 (CA 5, 1976), illustrates, even had the evidence revealed that Moore did not know the identities of defendants Peoples and Meredith, there would have been sufficient evidence to bind Moore over to the circuit court on the conspiracy charge:

> The jury was free to infer, from the frequency of the transactions and amounts of the drug involved, appellant's knowledge and intent that the cocaine he delivered . . . would be redistributed. . . . In such circumstances it is immaterial that appellant did not know the identity of the lower links in the chain of distribution.

With regard to defendant Moore, we conclude that the district court abused its discretion in failing to bind him over to the circuit court. The evidence established probable cause to believe Moore was involved in the conspiracy.

With regard to defendant Barnes, we find similarly that the district court abused its discretion in failing to bind her over to the circuit court. Although the district court found that Barnes did two overt acts in furtherance of the conspiracy in that she was "involved in two transactions—a 500 gram, and eight gram transaction," the court concluded there was insufficient evidence to establish probable cause that Barnes was involved in the conspiracy. With regard to Barnes' participation in the conspiracy, the court stated, "Ms. Barnes was the girlfriend, and if Cecil Peoples said jump, she would jump."

In essence, the court concluded that because Barnes was emotionally attached to Cecil Peoples

entire operation. . . . It need not . . . be shown that an alleged co-conspirator knew all of the purposes of and all the participants in the conspiracy.

through a romantic relationship, she lacked the ability to enter into a conspiracy. In reaching this conclusion, the court gave insufficient weight to the fact that Barnes accompanied Ms. Peoples on some of her trips to Detroit to purchase cocaine. According to Ms. Peoples, Barnes knew the purpose of those trips. Also, Ms. Peoples testified that Barnes' home was often used for "weighing" and "cooking" the purchased cocaine. Further, Detective Andrews testified that Barnes' home sometimes was used as a cocaine distribution center where dealers would pick up cocaine for sale in the streets of Saginaw. Finally, Ms. Peoples testified that Barnes gave her $13,000 to purchase cocaine on August 23, 1991.

In light of the foregoing facts, we conclude that there was probable cause to believe that Barnes conspired with the other defendants to deliver the cocaine. As discussed above, the fact that Barnes may not have been aware of all the particulars of the conspiracy is not fatal to plaintiff's theory. Large amounts of money were being expended for the purchase of large quantities of cocaine, and a jury could reasonably infer that Barnes had the knowledge and intent that the cocaine being delivered to Peoples would be redistributed. Accordingly, we find that the district court abused its discretion in failing to bind Barnes over to the circuit court on the charge of conspiracy to deliver 650 grams or more of a mixture containing cocaine.

We reverse the circuit court's affirmance of the district court determination that venue in Oakland County was improper and remand to the Oakland Circuit Court for arraignment.

M. E. DODGE, J., concurred.

HOLBROOK, JR. *(dissenting).* I dissent from the

majority's holding that the mere fact of travel
through a county, without more, constitutes an
overt act in furtherance of a conspiracy formed in
another county. Here, Lavinia Peoples' act of driv-
ing through Oakland County in her journey be-
tween Saginaw and Detroit was merely incidental
and fortuitous to the conspiracy charge. See, e.g.,
*Commonwealth v McPhail,* 429 Pa Super 103; 631
A2d 1305 (1993); *Lucas v United States,* 275 F 405
(CA 8, 1921), cert den 258 US 620 (1922).

Indeed, Peoples could have taken another route
to Detroit that did not traverse Oakland County,
or she could have taken a plane and merely flown
through airspace above Oakland County.[1] I find
nothing meaningful or significant about Peoples'
travel through Oakland County that could be con-
strued under MCL 762.8; MSA 28.851 as an "act"
—whether overt or not—done in perpetration of
the conspiracy. To hold otherwise, I believe, would
extend venue in criminal cases to absurd limits.
For example, had an unlawful agreement to dis-
tribute narcotics been formed in Houghton County
in the Upper Peninsula, would proper venue lie in
each of the approximately nineteen counties the
coconspirator would have to drive through on her
way to Detroit to purchase the narcotics? I think
not.

While the Legislature is clearly authorized to fix
venue for criminal offenses, questions of venue are
not merely matters of legal procedure, but "raise
deep issues of public policy in the light of which
legislation must be construed." *United States v
Johnson,* 323 US 273, 276; 65 S Ct 249; 89 L Ed
236 (1944). In construing a federal criminal statute

---

[1] But see *Marsh v State,* 95 NM 224, 226; 620 P2d 878 (1980)
(although finding venue proper in county over which airplane flew
while transporting marijuana, the court used its superintending
control to transfer the case to another county with "a more substan-
tial nexus between the criminal acts and the county").

that outlawed fraudulent use of the mails and that contained no specific venue provision, the *Johnson* Court, *id.* at 275, reasoned:

> By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution.

Thus, while I recognize that the Legislature intended in enacting MCL 762.8; MSA 28.851 "to define more specifically and possibly in some cases to extend the jurisdiction of courts in criminal cases," *People v Doe*, 264 Mich 475, 478; 250 NW 270 (1933) (NORTH, J., dissenting), I do not believe that it intended to erase all reasonable constraints on venue as will occur under the majority's reasoning.

Accordingly, I dissent.