PEOPLE *v.* COOPER.

1. CONSPIRACY—GREAT WEIGHT OF EVIDENCE.

On appeal from conviction for common-law conspiracy to corrupt the State legislature by bribery in which an individual appellant claimed the verdict as to him was "against the great weight of the evidence," the evidence must be considered in its entirety, having in mind the cumulative probative value which must be afforded to the testimony as it applies to an individual who is charged with having conspired with many others.

2. SAME—NATURE OF OFFENSE.

A conspiracy is a partnership in criminal purposes; there being no such thing as a one-man conspiracy.

3. CRIMINAL LAW—CONSPIRACY—WEIGHT OF EVIDENCE—QUESTION FOR JURY.

Credibility of testimony of people's key witness in prosecution for common-law conspiracy to corrupt the State legislature by bribery was for jury and not for trial court, where conviction depended upon weight to be given his testimony.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 8 Am Jur, Bribery, §§ 16, 33.
[2] 11 Am Jur, Conspiracy, §§ 3, 4, 10, 13.
[4] 11 Am Jur, Conspiracy, § 8.
[5, 6] 11 Am Jur, Conspiracy, § 5.
[10] 53 Am Jur, Trial, § 107.
[10] Right to limit number of witnesses. 21 ALR 335; 48 ALR 947.
[11, 12] 53 Am Jur, Trial, § 56.
[11, 12] Right to severance where two or more are accused. 70 ALR 1171; 104 ALR 1519; 131 ALR 917.
[13, 15] 11 Am Jur, Conspiracy, §§ 38, 40, 42.
[16] 3 Am Jur, Appeal and Error, § 976; 58 Am Jur, Witnesses, §§ 621, 624, 625, 627, 672.
[17] 53 Am Jur, Trial, §§ 458, 459, 996.

4. CONSPIRACY—PARTIES.

A person may be a party to a continuing conspiracy by knowingly co-operating to further the object thereof.

5. SAME—KNOWLEDGE OF RAMIFICATIONS.

It is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications.

6. SAME—KNOWLEDGE OF PARTICIPANTS.

It is not necessary to a conviction for conspiracy that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy.

7. SAME—ADMISSION OF TESTIMONY.

The rule governing the admissibility of testimony in a case where several defendants are charged with a conspiracy to commit a crime is broader than where a defendant is charged with a separate offense, either as a principal or as an aider and abettor, and, so far as the latter is concerned, it makes no difference whether the substantive offense is done pursuant to the conspiracy.

8. SAME—EVIDENCE—CORRUPTION OF LEGISLATURE BY BRIBERY.

In prosecution for common-law conspiracy to corrupt the State legislature by bribery, testimony as to appellant *held*, sufficient to justify the verdict of conviction as to him.

9. CRIMINAL LAW—QUESTIONS REVIEWABLE ON APPEAL—BRIEFS.

Consideration of claimed reversible errors is given to such errors as are discussed in brief of appellant herein, where he raised other grounds than were considered in another defendant's appeal from conviction of same conspiracy.

10. INDICTMENT AND INFORMATION—RES GESTAE WITNESSES—CUMULATIVE TESTIMONY.

In prosecution for common-law conspiracy to corrupt the State legislature by bribery, wherein appellant sought to have the name of one person, present at certain conferences, indorsed on the information and the person produced as a witness by the prosecution as a *res gestae* witness, it was not error to deny appellant's motion where such person later testified on behalf of appellant and his testimony proved to be cumulative to that of 4 other persons present at such meetings and who were called as witnesses.

11. CRIMINAL LAW—SEPARATE TRIAL—DISCRETION OF COURT.

When two or more defendants have been jointly informed against for a criminal offense, the granting or denial of a separate trial is in the discretion of the court (CL 1948, § 768.5).

12. CONSPIRACY—SEPARATE TRIAL—DISCRETION OF COURT.

Denial of separate trial to finance company executive who was charged with executives of other finance companies and legislators with a common-law conspiracy to corrupt the State legislature by bribery did not constitute an abuse of discretion in that appellant was convicted because of the wrongdoing of others in view of the cumulative effect resulting from combining together the separate conduct of two or more individuals to do an unlawful act—the essence of a criminal conspiracy (CL 1948, § 768.5).

13. SAME—EVIDENCE.

In a prosecution for conspiracy all of the testimony need not point directly to each defendant and some liberality in the admission of testimony is necessary.

14. SAME—EVIDENCE—DISCRETION OF COURT—PREJUDICE.

In conspiracy cases a precise rule as to competency and relevancy of evidence may not be formulated, admission of such evidence being, within reasonable bounds, in the discretion of the trial court and not ground for reversal in the absence of a showing of prejudice.

15. SAME—CIRCUMSTANTIAL EVIDENCE.

In a conspiracy case the jurors should have before them, and are entitled to consider, every fact which has a bearing on, and a tendency to prove, the ultimate fact in issue, hence great latitude must be allowed in the reception of circumstantial evidence and many facts of no consequence in isolation may be proved because of the persuasiveness of their united effect.

16. WITNESSES—COLLATERAL MATTERS—CROSS-EXAMINATION—DISCRETION OF COURT.

The discretion of the trial judge controls the nature and extent of the introduction of collateral matters upon cross-examination and will never be reviewed except in cases of abuse and this will not be lightly inferred.

17. CRIMINAL LAW—BREACHES OF COURTROOM ETIQUETTE—MISTRIAL.

In prosecution of 5 finance company executives and 17 legislators for common-law conspiracy to corrupt the State legislature by bribery, various breaches of courtroom etiquette and ethics of trial by the prosecution, some of which were invited by opposing counsel and others condoned by them and still others chastised by the court in the course of the trial which lasted 2 months, *held,* not to have resulted in a mistrial, although such conduct is not approved.

REID and BUSHNELL, JJ., dissenting.

Appeal from Ingham; Simpson (John), J., presiding. Submitted May 19, 1949. (Docket No. 67, Calendar No. 42,921.) Decided January 9, 1950. Rehearing granted February 28, 1950. See 328 Mich 159.

Abraham Cooper and others were convicted of a conspiracy to corrupt the legislature of the State of Michigan by bribery. Affirmed.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General; *Daniel J. O'Hara,* Assistant Attorney General, and *Richard B. Foster,* Special Assistant Prosecuting Attorney, for the people.

*Chris M. Youngjohn, Isadore Levin, Henry H. Sills* and *Butzel, Levin, Winston, Youngjohn & Quint (George E. Brand,* of counsel, on application for rehearing), for appellant Cooper.

Boyles, C. J. Appellant Abraham Cooper is one of the defendants referred to in *People* v. *Hancock, ante,* 471, in an opinion this day handed down. Appellant Cooper, together with other defendants, was tried before a jury and convicted on an information charging them with a conspiracy to influence the State legislature and its members by the giving and receiving of bribes. After conviction the defendants were each sentenced to be confined in State prison, and 16 of them are here prosecuting their appeals on a single consolidated record. Some of said defendants, including Cooper, are represented by separate counsel and have filed separate briefs. Part of the grounds relied upon by appellant Cooper for reversal, including claims of error in selecting the jury, in the conduct of the special prosecutor, and in the court's charge to the jury have been settled in *People* v. *Hancock, supra.* Others require separate consideration.

Abraham Cooper is one of the 5 "finance defendants" referred to in the *Hancock Case, supra,* 3 of whom were convicted—Hancock, Omacht and Cooper. Most of the essential facts relating to Cooper's connection with the alleged conspiracy are stated in the *Hancock* opinion.

Counsel for Cooper in their brief claim that the facts and circumstances as shown by the record do not establish his guilt as a party to the conspiracy. As stated by counsel, the claim is that the verdict of the jury, as to Cooper, was "against the great weight of the evidence." In that connection the evidence must be considered in its entirety, having in mind the cumulative probative value which must be afforded to the testimony as it applies to an individual who is charged with having conspired with many others. It must be remembered that this is not a charge against Cooper alone. In all, 5 "finance" defendants and 17 legislators were brought before the jury charged with a *conspiracy* to influence the 1939 legislature and its members by the giving and receiving of bribes.

"A conspiracy is a partnership in criminal purposes." *United States* v. *Kissel,* 218 US 601, 608 (31 S Ct 124, 54 L ed 1168).

"There is no such thing as a one-man conspiracy." *People* v. *Heidt,* 312 Mich 629, 642.

Counsel for Cooper in their statement of facts have carefully condensed 2,400 pages of testimony and exhibits received in the course of 9 weeks consumed by this trial into approximately 100 pages in their brief. We have given careful consideration to a review of the evidence as it applies to Cooper. Much of the record refers to the acts of Hemans, who was the key witness for the prosecution. Conviction unquestionably depended upon the weight to be given by the jury to his testimony. As to that,

its credibility was for the jury, and not· for the court.

An annual meeting of the "American Finance Conference" was held in Chicago in November, 1938, just prior to the biennial session of the State legislature beginning in January, 1939. Cooper, as a director of a finance company, attended. Originally, the concern of Cooper, and others present, was directed to a proposed small loan bill, later introduced as Senate Bill No 41. Cooper had an indirect interest therein as a director of a small loan company. At the close of the Chicago meeting he called a general meeting of finance company representatives, which was held in Detroit on December 1st, with upwards of 25 finance companies' executives present. In calling the meeting, Cooper wrote the various finance company executives as follows:

"It has come to the attention of finance companies that legislation detrimental to their interests was to be introduced in the next session in Lansing. A meeting to discuss this problem was held in Chicago on November 11th during the American Finance Conference session. In accordance with the unanimous suggestions of all of those in attendance, another meeting is being called for Thursday evening, December 1, 1938, at 6 p. m. to be held at the Statler Hotel, Detroit, Michigan.

"The purpose is to discuss fully the proposed legislation and to decide on a program of action."

Cooper presided at that meeting. Those present decided to appoint a legislative committee to raise funds, by assessing the finance companies various amounts, and to retain a "legislative agent" or lobbyist in Lansing. The smaller finance companies were to contribute $50 each, and the larger companies $100, to be "paid to Cooper direct." Later, Cooper called a meeting of Michigan finance companies for January 12th, after the legislative ses-

sion began, to discuss the position of finance companies in relation to legislation. There was testimony adduced at the trial that someone at that meeting suggested that the lobbyist was to buy votes if necessary. However truthful that may or may not be, Cooper from then on took the lead in raising funds for the lobbyist, was a member of the legislative committee which met in Cooper's office in Detroit and selected Hemans, with Cooper, Hancock and Omacht present. Hemans was to be paid a "retainer" of $500. His "fee" was to be $2,500 net to him, and $250 per month "for expenses." If the finance group introduced a bill, his minimum fee was to be $3,500.

Cooper claims that his activities, of which the foregoing was only the beginning, were solely in connection with a small loan bill, later introduced as Senate Bill No 41. That may have been true in the beginning. However, his activities on behalf of the finance companies were later broadened to include Senate Bills Nos 85 and 166, in which finance companies had a direct interest. Hemans used the money thus raised on behalf of finance companies to bribe members of the legislature in connection with those bills. Cooper wrote many letters, and attended the meetings, at which he presided as chairman of the legislative committee. At its last meeting held after the legislature had adjourned and Senate Bill No 166 (on which the conspiracy charge in part was based) had been passed, another assessment was levied on the finance companies through Cooper, and Hemans was paid up for his services. The funds raised by the legislative committee of which Cooper was the active chairman, which were turned over to Hemans by its treasurer Hancock, amounted to more than $8,000 and were paid to Hemans for his services and expenses on behalf of the finance companies in connection with legislation in the 1939 session, in

which Cooper and the finance companies were directly interested.

A person may be a party to a continuing conspiracy by knowingly co-operating to further the object thereof. *People v. Heidt, supra.* It is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications. *People v. DeLano,* 318 Mich 557. Nor is it necessary that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy. *People v. Garska,* 303 Mich 313. In a recent decision of the United States supreme court handed down April 18, 1949, several defendants had been charged in the first count of the indictment with a criminal conspiracy and in the 6 succeeding counts with separate acts in furtherance of the conspiracy. The defendants were convicted on all 7 counts. In affirming the convictions and sentences on the 6 subsequent counts, as well as on the count for conspiracy, the court said:

"The case was submitted to the jury on the basis of a single conspiracy throughout the period alleged in the indictment. * * * Each of the 6 substantive counts charged the presentation of a separate false invoice. The evidence showed the presentation of 11 other false invoices. This was part of the evidence received in support of the conspiracy count. * * * The trial court charged that one 'who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly.' That theory is well engrained in the law. See section 332 of the criminal code, 18 USC § 550, now § 2; *United States v. Johnson,* 319 US 503, 518 (63 S Ct 1233, 87 L ed 1546); *United States v. Dotterweich,* 320 US 277, 281 (64 S Ct 134, 88 L ed 48). In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he

wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in *United States* v. *Peoni* (CCA), 100 F2d 401, 402. * * * We see therefore no reason to exculpate him (Moncharsh) as an aider and abettor. * * * Aiding and abetting has a broader application. It makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy. And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy." *Nye & Nissen* v. *United States,* 336 US 613, 617–620 (69 S Ct 766, 93 L ed 919, 924, 925).

Our attention has been directed by counsel for defendant to the recent (September 20, 1949) case of *State* v. *Hild,* 240 Iowa 1119 (39 NW2d 139), in which Hild was charged with the offense of obtaining money from the county by false pretenses, by aiding and abetting. He was not charged together with others, as in the instant case, with a conspiracy. Under our decisions, as well as that of the United States supreme court in the *Nye & Nissen Case, supra,* the rule governing the admissibility of testimony in a case where several defendants are charged with a conspiracy to commit a crime is broader than where a defendant is charged with a separate offense, either as a principal or as an aider and abettor. The *Hild Case* is no authority in the instant case, and seems to be contrary to *Nye & Nissen* v. *United States, supra,* to the extent that the *Nye & Nissen Case* involved counts charging aiding and abetting, as a principal, in separate counts, on each of which counts convictions were affirmed by the United States supreme court together with the conviction on a conspiracy count. To repeat, for the purpose of emphasis on this point, the United States supreme court in the *Nye & Nissen Case* said:

"And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy."

Conceding that the credibility of the testimony of Hemans was for the jury, the evidence establishes beyond a reasonable doubt that the money raised largely through the efforts of Cooper and turned over to Hemans to pay him for his "services" and "for expenses" in connection with legislation in the 1939 session was used by Hemans to bribe legislators in favor of bills affecting finance companies. Without funds, the conspiracy to influence legislation would not have been carried on. The testimony concerning Cooper's connection with the conspiracy was sufficient to justify the verdict as to him beyond a reasonable doubt.

In addition to other grounds urged by Cooper for reversal, which have been considered in the Hancock appeal, Cooper has raised other grounds claimed to amount to reversible error which merit consideration. We refer only to such additional grounds as are discussed in appellant's brief.

1. Cooper moved that the prosecution be required to indorse the name of one Schwemler on the information and produce him as a witness. Appellant claims that Schwemler was present at certain conferences; that "Schwemler was as much a *res gestae* witness concerning the happenings and transactions at those 2 meetings as were Smith, Prew, Otis, and Clifford, the only 4 of all those in attendance who were called as witnesses by the prosecutor." Schwemler was later sworn and testified as a witness for Cooper. His testimony proved to be cumulative. Such testimony need not be offered by the people. It was not error to deny the motion. *People v. Bartlett*, 312 Mich 648, 654.

2. Cooper moved for a separate trial. When 2 or more defendants have been jointly informed against for a criminal offense, the granting or denial of a separate trial is in the discretion of the court. CL 1948, § 768.5 (Stat Ann § 28.1028). Appellant claims an exception to the rule—that he was convicted because of the wrongdoing of others. However, appellant overlooks the fundamental issue in a criminal conspiracy case—the cumulative effect resulting from combining together the separate conduct of 2 or more individuals to do an unlawful act. The trial court did not err in denying appellant's motion for a separate trial. *People* v. *Burczyk,* 308 Mich 194.

3. Counsel point to various rulings of the trial court in admitting testimony over objection, in excluding other testimony, and in some instances curtailing examination of the witness Hemans on collateral matters. In a case of this nature, all of the testimony need not point directly to each defendant, and some liberality in the admission of testimony is necessary. In a review of the record made at this lengthy trial we do not find any abuse of discretion in that regard which would be considered prejudicial error and require a reversal. Similar grounds for reversal have recently been raised here on other appeals from convictions in criminal conspiracy cases. The yardstick to determine whether there was reversible error on such matters during the trial was recently stated thus:

"These alleged errors should be viewed in the light of the law which, we think, may be stated in substance as follows: In conspiracy cases it is quite impossible to formulate a precise rule of evidence as to what testimony is and what is not admissible as being competent and relevant. Within reasonable bounds the rulings of this character are within the discretion of the trial court and in the absence of a

showing of prejudicial error such rulings do not afford a ground of reversal.

"'In the reception of circumstantial evidence great latitude must be allowed. The jurors should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue and which will enable them to come to a satisfactory conclusion. Many facts of no consequence in isolation may be proved because of the persuasiveness of their united effect.' 15 CJS, Conspiracy, § 92(b), p 1141. * * *

"Appellants also assert error in that their right of cross-examination in a number of instances cited in their brief was unduly restricted by the trial court. Our review of the record fully satisfies us that ample latitude of cross-examination by the defendants was permitted. There is no merit to this asserted ground of error.

"'The discretion of the trial judge controls the nature and extent of the introduction of collateral matters upon cross-examination and will never be reviewed except in cases of abuse and this will not be lightly inferred. 1 Greenleaf on Evidence (8th ed), §§ 446–448; *People* v. *McArron,* 121 Mich 1.'" *People* v. *Fleish,* 321 Mich 443, 459, 464.

4. Counsel for appellant strenuously complain of many occurrences during the long trial of this case before the jury, and at the argument, concerning the acts, statements and conduct of the special prosecutor for the people, and insist that prejudicial error was thus injected into the trial. The instances referred to have been canvassed and considered. We refrain from quoting them extensively. The breaches of courtroom etiquette and the ethics of trial were frequent but not entirely one-sided. Some of them were invited by opposing counsel—some were condoned and some were chastised by the patient court. We are not prepared to say that the conduct of the prosecution was such that a mistrial must result.

Doubtless the jury was able to sort out the grain and reject the chaff. However, the condoning of such lapses from proper courtroom conduct should not be construed as meaning that they have the approval of the Court. *People* v. *DeLano, supra.*

Affirmed.

NORTH and SHARPE, JJ., concurred with BOYLES, C. J.

BUSHNELL, J. *(dissenting).* For the reasons stated in *People* v. *Omacht, ante,* 505, decided herewith, I am unable to agree with the conclusions reached by Mr. Justice BOYLES.

The conviction should be set aside and a new trial should be granted.

REID, J., concurred with BUSHNELL, J.

DETHMERS, BUTZEL, and CARR, JJ., did not sit.