Markman, J.
(concurring). I agree with the majority’s analysis and conclusion that, while the amount of a controlled substance is an element of a delivery offense pursuant to MCL 333.7401, a defendant’s knowledge of such amount is not. However, with regard to whether knowledge of the amount of a controlled substance is an element of a conspiracy to deliver offense, I respectfully concur in the result only and write separately to express my concern that the majority’s analysis, which concludes that defendant’s knowledge of the amount is an element of a conspiracy to deliver offense, broadens the plain language of both the delivery statute, MCL 333.7401, and the conspiracy statute, MCL 750.157a. Further, the majority’s conclusion, in my judgment, has seriously *647 detrimental consequences for Michigan’s criminal justice jurisprudence.
I. PEOPLE v JUSTICE
In concluding that defendant’s knowledge of the amount is an element to a conspiracy to deliver charge, the majority first relies on People v Justice (After Remand), 454 Mich 334; 562 NW2d 652 (1997). As the majority correctly points out, the Justice Court held that, in a conspiracy to possess with intent to deliver charge, the prosecutor has the burden of proving that “the defendant possessed the specific intent to deliver the statutory minimum as charged . . . .” Id. at 349. In my judgment, this holding misstated the law in that it impermissibly broadened the plain language of both the delivery statute, MCL 333.7401, and the conspiracy statute, MCL 750.157a, by requiring a higher level of criminal intent than set forth by those statutes. Instead, a careful review of these statutes indicates that, in a conspiracy to deliver charge, the prosecutor only has the burden to prove that defendant had the intent to agree, and the specific intent to commit the substantive offense, in essence, to deliver a controlled substance.[1] The majority correctly concludes that knowledge of the amount of a controlled substance is not an element of a delivery charge. *648 However, I fail to understand why it nevertheless concludes that, when a defendant is charged with conspiracy to deliver, knowledge of the amount suddenly becomes an element. If knowledge is not an element of a delivery charge, how is it properly transformed into an element of a conspiracy to deliver offense? In my judgment, under the facts of this case, it cannot.
A. GENERAL CONSPIRACY LAW
At common law, the crime of conspiracy was complete upon formation of the unlawful agreement. Developments in the law — Criminal conspiracy, 72 Harv L R 922, 945 (1959). Michigan’s approach to conspiracy law mirrors that of the common law. In Michigan, “[a]ny person who conspires together with one or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . .” MCL 750.157a. This common-law approach to the crime of conspiracy, however, is not the approach followed in a majority of jurisdictions. Today, most state conspiracy statutes, as well as the federal government general conspiracy statute, 18 USC 371, require the additional element of an overt act.[2] An overt act is defined *649 as some act taken by one of the conspirators in furtherance of the conspiracy. Marcus, Prosecution and Defense of Criminal Conspiracy Cases, ch 2.08 at 2-71. The requirement of an overt act serves two principal purposes. First, some believe that an overt act requirement is desirable so that a conspirator is afforded a reasonable opportunity to change his mind and to withdraw from the conspiracy. “The provision of the statute, that there must be an act done to effect the object of the conspiracy, merely affords a locus poenitentice, so that before the act [is] done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute.” United States v Britton, 108 US 199, 204-205; 2 S Ct 531; 27 L Ed 698 (1883). In addition, the overt act requirement serves to make certain that society does not intervene prematurely, i.e., at a time when there is not a sufficiently imminent danger that the object crime will be attempted or completed. Marcus, supra at 2-74. “The function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work” and is not a project resting solely in the minds of the conspirators.[3] 2 LaFave & Scott, Substantive Criminal Law, § 6.5 at 95. Thus, the overt act requirement ensures that the agreement to commit an unlawful objective has reached a sufficiently advanced stage to warrant preventative action.
*650 In practice, prosecutors rarely charge individuals with a conspiracy until a substantial overt act has taken place. Marcus, supra at 2-76.[4] Indeed, it is frequently the case that the completed substantive offense itself will be identified as the overt act for purposes of the conspiracy charge. Id. at 2-76, n 18. This is readily evident in federal conspiracy cases that rely on the general conspiracy statute. See, e.g., United States v Feola, 420 US 671; 95 S Ct 1255; 43 L Ed 2d 541 (1975). Indeed, in the case before us, the substantive offense itself was completed, in effect constituting the overt act in furtherance of the unlawful objective. As explained in the majority opinion, defendant was convicted, on an aider and abettor theory, of delivery of 225 grams or more, but less than 650 grams, of a mixture containing cocaine. Because an overt act was, in fact, evident in this conspiracy, namely, the completed offense, this case is indistinguishable from the universe of conspiracies that are addressed by federal conspiracy law. Thus, I believe that the principles applied in these cases are highly relevant to the resolution of this case.[5]
*651 B. PEOPLE V FEOLA
In Feola, supra, the United States Supreme Court considered an issue similar to that presented in this case. There before the Court was whether the crime of conspiracy to assault a federal drug officer required a criminal intent greater than that required to convict for the substantive offense. Specifically, the Court sought to determine whether the defendant had to “know” that the intended victim was, in fact, a federal officer.
In the years before Feola there had been a split among the federal circuit courts. In a majority of the circuits,[6] the courts held that, in a conspiracy to commit a federal substantive offense, a defendant need not have knowledge of the attendant circumstances embodied in the substantive offense. For example, in United States v LeFaivre, 507 F2d 1288 (CA 4, 1974), the United States Court of Appeals for the Fourth Circuit was asked to determine whether, in a conspiracy to violate the travel act, 18 USC 1952, the defendant needed to have knowledge of the use of interstate facilities in order to be found guilty on the conspiracy charge. In answering this question in the negative, the Fourth Circuit reasoned that “[w]hether or not certain *652 conspirators actually anticipate the use of facilities in interstate commerce when they plan their unlawful activity of gambling, bribery, etc., add[s] absolutely nothing to the dangerousness of their scheme to the public weal.” Id. at 1299; see also United States v Polesti, 489 F2d 822 (CA 7, 1973); United States v Roselli, 432 F2d 879 (CA 9, 1970). Conversely, the Court of Appeals for the Second Circuit rejected the majority Anew. In United States v Cangiano, 491 F2d 906 (CA 2, 1974), the court analyzed whether the defendant, in a conspiracy to transport obscene materials in interstate commerce, must have knowledge that the business would use interstate facilities. In answering this question in the affirmative, the court stated that, because specific intent is required to prove conspiracy, “the proper charge requires that the element of actual knowledge be found by the jury.” Id. at 910. The United States Supreme Court sought to finally resolve the knowledge issue in Feola, supra.[7]
*653 1. THE SUBSTANTIVE OFFENSE
To resolve the question whether a defendant must know that his intended victim is a federal officer in a conspiracy to assault a federal officer, the Court first examined the elements of the substantive offense, 18 USC 111. In pertinent part, the substantive offense at issue in Feola stated:
Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.
Among the persons “designated in section 1114” of 18 USC is “any officer or employee ... of the Bureau of Narcotics and Dangerous Drugs.” [Feola, supra at 673, n 1.]
After analyzing the language of the statute, the Court concluded that § 111 “cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer.” Id. at 684; United States v Lombardozzi, 335 F2d 414, 416 (CA 2, 1964). Instead, the Court found that the statute required an “intent to assault, not an intent to assault a federal officer.” Feola, supra at 684. The requirement that the victim be a federal officer was merely an element of the substantive offense that need not be specifically known to the defendant. Thus, to prove the substantive offense, the government only needed to establish, among other things, that the vic *654 tim was a federal officer, not that the defendant knew that the victim was a federal officer.
In the case before us, MCL 333.7401 provides in pertinent part:
(1) [A] person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance ....
(2) A person who violates this section as to:
(a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug . . . and:
(i) Which is in an amount of 650 grams or more of any mixture containing that substance is guilty of a felony and shall be imprisoned for life ....
(ii) Which is in an amount of 225 grams or more, but less than 650 grams, . . . shall be imprisoned for not less than 20 years nor more than 30 years.
(iii) Which is in an amount of 50 grams or more, but less than 225 grams, . . . shall be imprisoned for not less than 10 years nor more than 20 years.
(iv) Which is an amount less than 50 grams . . . shall be imprisoned for not less than 1 year nor more than 20 years ....
A review of this statute indicates that a defendant must have the intent to deliver a controlled substance, not an intent to deliver an amount that falls within a particular statutory range. Subsection (1) clearly states that “a person shall not . . . deliver ... a controlled substance.” Such an interpretation of this language does not mean that the amount is not an element of the offense. It is. Rather, such an interpretation simply means that a defendant need not specifically know the amount in order to be convicted of this offense. This conclusion, in my judgment, is in accord with the majority’s determination that, while *655 the amount of a controlled substance is an element to a delivery charge, knowledge of the amount is not.
2. THE CONSPIRACY STATUTE
The Feola Court then turned to “consider whether the rule should be different where persons conspire to commit” the substantive offense at hand. Id. at 686. With regard to the conspiracy offense, the defendant specifically urged the Court to conclude that
the Government must show a degree of criminal intent in the conspiracy count greater than is necessary to convict for the substantive offense; he urges that even though it is not necessary to show that he was aware of the official identity of his assaulted victims in order to find him guilty of assaulting federal officers, . . . the Government nonetheless must show that he was aware that his intended victims were undercover agents, if it is successfully to prosecute him for conspiracy to assault federal agents. Id. at 686-687.
To resolve whether the defendant was correct in his analysis, the Court examined the text of the conspiracy statute. It explained that, if a knowledge requirement exists, it would have to be found within the text of the conspiracy statute, 18 USC 371.
The conspiracy statute at issue in Feola made it unlawful to “conspire ... to commit any offense against the United States.” Feola, at 687. On the basis of this language, the Court stated that “[a] natural reading of these words would be that since one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engage in the prohibited conduct.” Id. In other words, the Court found that “there is nothing on the face of the *656 conspiracy statute that would seem to require that those agreeing to the assault have a greater degree of knowledge.” Id. at 687.
Similar to the federal conspiracy statute, Michigan’s conspiracy statute prohibits an individual from “con-spir[ing] ... to commit an offense prohibited by law . . . .” MCL 750.157a. A review of the language of the conspiracy statute reveals that a conspiracy to commit an offense prohibited by law requires nothing more than: 1) an intent to agree; and 2) an intent to engage in the prohibited conduct. See also People v Atley, 392 Mich 298, 310; 220 NW2d 465 (1974). In Justice, this Court apparently agreed with this general rule. As noted previously, the Justice Court stated that “in order to bind defendant over on the two counts of conspiracy there must be probable cause to believe that defendant and the coconspira-tors shared the specific intent to accomplish the substantive offenses charged.” Justice, supra at 337 (emphasis added); see also id. at 345-347. The Justice Court accordingly proceeded to set forth the substantive offense at issue, MCL 333.7401. Then, without analysis of the substantive offense, Justice inexplicably concluded that the “defendant [must] possess [] the specific intent to deliver the statutory minimum as charged . . . .” Id. at 349. Such a conclusion, in my judgment, was erroneous because, as noted previously, the language of MCL 333.7401, does not require that a defendant harbor the intent to deliver an amount that falls within a particular statutory range.[8]
*657 The majority asserts that, by concluding that a defendant need not possess the intent to deliver the statutory minimum as charged, I am “convert[ing]” a specific intent crime into a general intent crime. Respectfully, I disagree. Again, conspiracy involves: i) an intent to agree, and ii) an intent to engage in prohibited conduct. “One of these intents may exist ■without the other.” LaFave, supra at 76. Clearly, two or more individuals may intend to agree on some matter without also having an intent to engage in prohibited conduct. For example, A and B agree to bum certain property and A knows the property belongs to c, but B believes that the property belongs to A himself. In this scenario, there is no intent to engage in prohibited conduct on b’s part because B believes that the property belongs to A. In the instant case, however, the conspirators clearly had the intent to agree and the additional intent to engage in prohibited conduct — the delivery of a controlled substance. Thus, as in Feola, the specific intent attributes of a conspiracy remain intact.
3. REJECTING THE SECOND CIRCUIT APPROACH
Next, the Feola Court turned to its own case law to determine whether a defendant was ever required to possess specific knowledge of the attendant circumstances when charged with a conspiracy to commit a federal offense. The Supreme Court identified prior case law that repudiated such a position. Citing In re Coy, 127 US 731, 8 S Ct 1263, 32 L Ed 274 (1888), and *658 United States v Freed, 401 US 601, 91 S Ct 1112, 28 L Ed 2d 356 (1971), the Feola Court stated that historically it has “declined to require a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense.” Id. at 688.
The Court then turned to United States v Crim-mins, 123 F2d 271 (CA 2, 1971), the first case that set forth the principle that the government must prove knowledge of the attendant circumstances embodied in the substantive offense in order for a defendant to be liable when charged with a conspiracy. In Crim-mins, supra, the defendant was charged with conspiracy to receive stolen bonds that had been transported in interstate commerce. 18 USC 371; 18 USC 415. The Second Circuit held, that in order to be convicted of conspiracy to commit the substantive offense, it was necessary that the defendant actually know that the bonds crossed interstate lines. Crim-mins, supra at 273-274. To accept the view that a defendant need not have knowledge of the attendant circumstances would, according to the Crimmins court, “enlarge their agreement beyond its terms as they understood them.” Feola, supra at 689, citing Crimmins, supra. To emphasize its conclusion, the Crimmins court set forth what has become the well-known traffic light analogy.
While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past. [Id. at 273.]
*659 Although the Feola Court found this analogy “seductive,” it concluded that it was clearly “bad law.” Id. at 689-690. The Court asserted that the traffic light analogy was relevant only for the category of offenses for which no mental state was required regarding any of the elements. Id. at 690; see also LaFave, supra at 82. These cases must be distinguished from offenses, such as 18 USC 111, that “require a certain mental state as to some elements of the crime but not as to others.” LaFave, supra; Feola, supra at 691-692; see also United States v Franklin, 586 F2d 560 (CA 5, 1978); United States v Beil, 577 F2d 1313 (CA 5, 1978); State v Brown, 94 Wash App 327; 972 P2d 112 (1999).
Indeed, like the substantive offense in Feola, MCL 333.7401 is an offense that requires a certain mental state regarding some elements of the crime, but not others. A defendant need only have the intent to deliver a controlled substance, MCL 333.7401(1), and then the substance must be in a mixture or in an amount that falls within one of the enumerated ranges, MCL 333.7401(2).
The majority ascribes significance to the fact that the instant offense is one that is “graduated to be more severe as the act is more antisocial . . . .’’In the majority’s view, the element making the offense more severe must be shown to be known by the defendant. I do not see the point. In Feola, the offense at issue was similarly “graduated.” See also Franklin, Beil, and Brown, supra. The element that did not require the mental state in Feola was the same element that increased the severity of the crime. The defendant did not need to be aware of the element that ultimately determined the severity of the *660 crime. Instead, the prosecutor only needed to prove the existence of particular facts concerning the federal officer’s identity and to connect these facts to the conspiracy. Similarly, in this case, where defendant has conspired to deliver a controlled substance and where there has been an act in furtherance of this objective, he need not have been aware that the amount of the controlled substance fell within a particular statutory range in order to be convicted of the more severe crime. Instead, all that is necessary is that the prosecutor prove beyond a reasonable doubt that the amount fell within a particular statutory range, and connect this amount to the conspiracy. Because neither the plain language of MCL 333.7401 nor MCL 750.157a require that a defendant specifically know the amount of controlled substance, the majority is impermissibly adding an element to two otherwise straightforward criminal statutes. In re MCI Telecommunications Complaint, 460 Mich 396, 414-415; 596 NW2d 164 (1999).[9]
*661 4. THE PURPOSES UNDERLYING CONSPIRACY LAW
Finally, the Feola Court emphasized that requiring knowledge of the attendant circumstances would be wholly inconsistent with the purposes of the conspiracy statute. Id. at 693. The Court, first, opined that conspiracy law serves as a means to protect society from the dangers incident to group criminal activity. Id.) see also LaFave, supra at 68.
Given the level of criminal intent necessary to sustain conviction for the substantive offense, the act of agreement to commit the crime is no less opprobrious and no less dangerous because of the absence of knowledge of a fact unnecessary to the formation of criminal intent. Indeed, unless imposition of an “antifederal” knowledge requirement serves social purposes external to the law of conspiracy of which we are unaware, its imposition here would serve only to make it more difficult to obtain convictions on charges of conspiracy, a policy with no apparent purpose. [Feola at 693-694.]
Similarly, Michigan’s conspiracy statute serves as a means of addressing the special dangers associated with group activity.
“[Collective criminal agreement — partnership in crime— presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one *662 criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.” [People v Denio, 454 Mich 691, 704; 564 NW2d 13 (1997), quoting People v Carter, 415 Mich 558, 570; 330 NW2d 314 (1982).]
Because Michigan conspiracy law also seeks to protect society from the danger of concerted action, it is not relevant whether each defendant has knowledge that the amount of the controlled substance fell within a particular statutory range. The agreement to commit a drug offense, and an act in furtherance of that agreement, “is no less opprobrious and no less dangerous because of the absence of knowledge of a fact unnecessary to the formation of criminal intent.” Feola, supra at 693. A participant in a conspiracy knows that delivery of any amount of drugs is unlawful. Imposition of a knowledge requirement would only serve, without apparent rationale, to make it more difficult to obtain conspiracy convictions that are above the levels of punishment for the lowest level delivery offense.
Further, the Feola Court observed that conspiracy law also serves as a means of intervention against individuals who manifest a disposition to criminality. Feola, supra at 694; see also LaFave, supra at 68. “[Although the law generally makes criminal only antisocial conduct, at some point in the continuum between preparation and consummation, the likelihood of a commission of an act is sufficiently great” to justify intervention. Feola, supra at 694. At this point “[c]riminal intent has crystallized, and the likeli *663 hood of actual, fulfilled commission warrants preventive action.” Id. Because of this, the Supreme Court again did not see how the imposition of a knowledge element would relate rationally to this purpose. “Given the level of intent needed to carry out the substantive offense, we fail to see how the agreement is any less blameworthy or constitutes less of a danger to society solely because the participants are unaware which body of law they intend to violate.” Id. Thus, the Court stated that imposition of a knowledge requirement would render it more difficult to serve the purpose behind the law of conspiracy without serving any other apparent social policy. The Court concluded its analysis by expressly rejecting a result that would, in the context of a conspiracy to commit a federal offense, require that a defendant have knowledge of the attendant circumstances, instead holding that “where knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction of a substantive offense embodying a mens rea requirement, such knowledge is equally irrelevant to questions of responsibility for conspiracy to commit that offense.” Id. at 696.
As in Feola, conspiracy to deliver a controlled substance, and an act in furtherance of this objective, entail a sufficient threat to the social order to be sanctionable in the manner determined by the Legislature.[10] The fact that a conspirator is unaware that the amount of the controlled substance fell within a particular statutory range does not make the agreement any less threatening, or the conduct of the conspira *664 tor any less blameworthy. It is enough that defendant or a coconspirator acted in furtherance of their agreement to deliver a controlled substance.
Further, it is important to highlight that the agreement necessary in a conspiracy is not akin to the “meeting of the minds” premises of traditional contract law. LaFave, supra at 71. It is not necessary that each conspirator have knowledge of each of the details of the object offense. Id.; People v Cooper, 326 Mich 514, 521; 40 NW2d 708 (1950) (recognizing that “ [i]t is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications”). A mere tacit understanding about the object offense will suffice. LaFave, supra at 71. In other words, all that is needed is a generalized agreement to engage in an unlawful objective. Marcus, supra at 2-4. There need not be a specific agreement to commit a 200-gram, a 400-gram, or a 600-gram conspiracy, nor will the law engage in mind reading in an effort to determine the innermost strategic objectives of each of the individual coconspirators and punish a single conspiracy with multiple levels of punishment depending upon the outcome of such mind reading. The need only for generalized agreement is premised on the fact that conspiracies are inherently clandestine in nature. Because of this secret nature, individual coconspirators may have relatively little knowledge of the conduct or actions of even their own coconspirators; indeed, efforts may frequently be undertaken to limit the dissemination of information concerning strategies and tactics on a “need to know” basis.
Thus, in a conspiracy to deliver case, such as the instant one, all that the prosecutor would need to show regarding a defendant’s intent is a generalized *665 agreement to deliver a controlled substance, i.e., the unlawful objective. That the amount falls within a particular statutory range is the sort of detail that is simply not required to be known by a defendant who enters into the criminal agreement that constitutes the conspiracy. Thus, because the crime of conspiracy focuses on the formation of criminal intent in pursuit of a substantive criminal offense, and because a defendant need not know each of the attendant details of the conspiracy, imposition of a knowledge requirement, a requirement not within the plain language of the conspiracy (or delivery) statute, would undermine the early intervention premises of conspiracy law.
In conclusion, I believe the Justice Court impermis-sibly expanded the plain language of both the delivery statute and the conspiracy statute to require a higher level of culpability on the part of a defendant than that embodied in those statutes. There is nothing within the text of either of these statutes that would compel a finding that a defendant must have knowledge of the amount of the controlled substance in a conspiracy to deliver charge. Thus, I respectfully disagree with the majority’s statement that “Justice properly concluded that knowledge of the amount of a controlled substance is an element of the crime of conspiracy to deliver a controlled substance, and that this holding is consistent with a correct inteipretation of our controlled substance and conspiracy statutes.” Ante at 633-634.
III. APPRENDI v NEW JERSEY
In concluding that knowledge of the amount is an element of a conspiracy to deliver charge, the major *666 ity also relies on Apprendi v New Jersey, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). As the majority states, Apprendi holds that
[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. [Id. at 490.]
I respectfully disagree that this holding “provides independent support for [the majority’s] conclusion.” Ante at 634. The clear language of the Apprendi holding does not impose a knowledge requirement. Instead, Apprendi stands for no more than what the stated rule declares — it only proscribes the use of nonjury factual determinations to increase a defendant’s sentence beyond the statutory maximum for the lowest level delivery offense enacted for the offense charged. In this case, the fact or circumstance that would increase the defendant’s sentence beyond the statutory maximum is the amount of the controlled substance, not knowledge of the amount. Thus, pursuant to Apprendi, the prosecutor in cases of this type must prove the amount of the substance beyond a reasonable doubt.
Further, the majority cites several federal cases that were decided after Apprendi to justify its holding that knowledge of the amount is an element to a conspiracy to delivery charge. However, not one of the cited cases stands for the proposition that defendant must have knowledge of the amount in order to be convicted of either the substantive narcotics offense or conspiracy to commit the substantive offense. Rather, all that is necessary is proof of the amount. See United States v Doggett, 230 F3d 160, 164-165 (CA *667 5, 2000) (holding that “if the government seeks enhanced penalties based on the amount of drugs . . . the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt”); United States v Page, 232 F3d 536, 543 (CA 6, 2000) (holding that the jury needed to find a specific quantity before this defendant could be imprisoned to a term exceeding the 20-year statutory maximum); United States v Fields, 345 US App DC 205, 208; 242 F3d 393, 396 (2001), clarified on rehearing 2001 WL 640631 (June 12, 2001) (holding that “the Government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt” before defendant can be sentenced to any of the progressively higher maximum penalties). Additionally, there appears to be no state case law addressing this issue subsequent to the Apprendi holding. Thus, the majority’s opinion is the first apparently to rely on Apprendi in order to set forth this “knowledge of the amount” requirement.
Also, the reaffirming of Justice, will continue to severely affect the manner in which the prosecutors of this state proceed on these types of offenses. By holding that knowledge of the amount of the controlled substance is an element of a conspiracy to deliver charge, prosecutors are burdened with the additional hurdle of having to prove a defendant’s specific knowledge of the amount of a controlled substance — a hurdle, whatever its substantive merits, that the Legislature did not prescribe in the text of the applicable statutes. In light of this additional hurdle, it is likely that in some unknown, but probably quite significant, number of drug prosecutions the *668 prosecutor will be unable to maintain a conviction that is above the statutory maximum for the lowest level delivery offense. This is because the inherent nature of these crimes involve agreements between individuals to deliver “a lot of,” “some,” or “all that you can get” of a controlled substance. Thus, because a defendant’s knowledge that the amount of the controlled substance fell within a particular statutory range will be lacking in many instances, prosecutors, under these circumstances, will only be able to secure a conviction on the lowest delivery amount, in essence, for an amount less than 50 grams.[11] As a result, the sanctions determined to be appropriate for drug crimes by the Legislature will not be carried out. In my judgment, the Legislature intended what it said in MCL 333.7401, namely, that a defendant is responsible for whatever quantity of drugs he delivers regardless of whether he knew that the amount fell within a particular statutory quantity range.
IV. APPLICATION
When applying the plain language of the delivery and conspiracy statutes, as well as the holding of Apprendi, supra, to the facts of this case, I believe that error occurred below because the prosecutor failed to prove the quantity (that the substance weighed 225 or more grams, but less than 650 grams) *669 beyond a reasonable doubt in the context of the conspiracy to deliver charge.
In pertinent part, the jury instructions stated:
The defendant is charged with the crime of Conspiracy to Commit the Delivery of Cocaine. Anyone who knowingly agrees with someone else to commit the Delivery of Cocaine is guilty of Conspiracy. To prove the defendant’s guilt the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant and someone else knowingly agreed to commit Delivery of Cocaine. Second, that the defendant specifically intended to commit or help commit the crime. Third, that this agreement took place, or continued during the period from March Nineteenth to March Twenty-Seventh, Nineteen Ninety-Six. ... To find the defendant guilty of conspiracy, you must be satisfied, beyond a reasonable doubt, that there was an agreement to deliver-to deliver cocaine.
These instructions clearly omitted any reference to a particular amount of a controlled substance. Yet, on the basis of these instructions, defendant was convicted of conspiracy to deliver more than 225 grams, but less than 650 grams, of cocaine. Conviction on this amount exposed defendant to a term of imprisonment of twenty to thirty years, significantly above the one-to-twenty-year term provided for a conviction on an amount that is less than 50 grams. MCL 333.7401. The jury instructions should have set forth the requisite substance amount in a fashion similar to that set forth to prove the substantive offense, in essence, “that the substance was in a mixture that weighed 225 or more grams, but less than 650 grams.” Ante at 638. Absent an express jury finding on the substance amount, we cannot be certain that the jury found that defendant conspired to deliver an amount of drugs greater than 50 grams. From defendant’s guilty ver- *670 diet, one can only conclude with assurance that the jury concluded that defendant delivered some amount of drugs. And pursuant to Michigan law delivery of any amount of drugs is a crime. MCL 333.7401(2)(iv). Accordingly, as with the majority, I would reverse defendant’s conspiracy to deliver 225 grams or more, but less than 650 grams, of cocaine and remand for entry of a conviction consistent with the jury verdict, in essence, conspiracy to deliver less than 50 grams of cocaine.
V. CONCLUSION
In summary, I believe that the majority’s conclusion that knowledge of the amount is a necessary element in a conspiracy to deliver charge is inconsistent with the plain language of both the delivery statute and the conspiracy statute. Where there is an agreement to commit the unlawful act of delivery of a controlled substance and some act in furtherance of that agreement,[12] it is impermissible to require an element of a crime that goes beyond this language. Second, the United States Supreme Court decision in Apprendi, supra, does not provide support for imposition of the knowledge requirement. Instead, the Apprendi holding establishes the amount of the controlled substance as an element of the offense if the amount operates to increase the penalty for the crime beyond *671 the prescribed statutory maximum. Third, the majority’s holding will severely affect the manner in which the prosecutors of this state proceed on these types of crimes. By holding that knowledge of the quantity of a controlled substance is an element to a conspiracy to deliver charge, prosecutors, in some uncertain number of cases, will be unable, for little apparent reason, to maintain a conviction on this offense that is above the statutory maximum for the lowest level delivery offense because evidence concerning a defendant’s knowledge in a great number of cases will be lacking. This is not, in my judgment, what the Legislature intended. Instead, the Legislature intended what it said — that a defendant who conspires to deliver is responsible for whatever quantity of drugs he agrees to deliver regardless of whether he knew that the amount fell within a particular statutory quantity range.
Corrigan, C.J., and Weaver, J., concurred with Markman, J.

 Interestingly, in Justice, supra, this Court also stated that, in order to bind the defendants over on a conspiracy to possess with intent to deliver charge, the prosecutor must show probable cause that the “coconspirators shared the specific intent to accomplish the substantive offenses charged." Id. at 337 (emphasis added). However, as will be discussed, below at 656, when the Justice Court applied this general rule to the substantive offense, it somehow concluded that the “defendant [must] possess!] the specific intent to deliver the statutory minimum as charged . . . .” Id. at 349.

 Developments in the law, supra at 945-946. Compare with the federal government’s subsequent specific-subject conspiracy statutes that no longer have an overt act requirement. See, e.g., the Rico conspiracy statute, 18 USC 1962(d), and the drug conspiracy statute, 21 USC 846. Additionally, even despite the absence of an overt act requirement in the drug conspiracy statute, federal drug conspiracy prosecutions do not require that a defendant have knowledge of the amount of the controlled substance. Instead, as will be discussed in part m, all that is necessary for a conviction on the substantive drug offense and the conspiracy offense is merely proof of the amount of the controlled substance. See, e.g., United States v Fields, 345 US App DC 205, 208; 242 F3d 393, 396 (2001), clarified on rehearing 2001 WL 640631 (June 12, 2001) (stating that “it is now clear *649 that, in drug cases under 21 USC 841 & 846, before a defendant can be sentenced to any of the progressively higher statutory máximums that are based on progressively higher quantities of drugs specified in 841[b][l][A] or [B], the government must state the drug type and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt”).

 Such a concern, in particular, appears to animate the majority opinion and is a concern most relevant to what I will describe as the “pure” Michigan conspiracy, one in which there has been no overt act. See note 5.

 As a practical matter, there is little evidence that charging practices are any different on the part of Michigan prosecutors, despite the absence of an overt act requirement.

 Although Michigan law allows for the prosecution of drug conspiracies in which the evidence shows that the conspirators merely agreed to commit an offense prohibited by law, MCL 750.157a, even absent an overt act, such a “pure” Michigan conspiracy is, as we have noted, not before us. Indeed, such “pure” conspiracies are rarely before us, given the considerable problems of proof that these conspiracies must surmount. This concurrence takes no position with regard to the knowledge requirements of the “pure” conspiracy case, which, as the majority points out, involves a variety of unique concerns. What is before us is the far more commonplace conspiracy in which there has been some overt act, therefore rendering the conspiracy, and its elements, indistinguishable from the typical federal conspiracy. It seems altogether relevant, where conspirators in Michigan have acted in furtherance of a conspiracy by taking overt acts *651 toward its ends, to look to federal law for whatever guidance such law might provide in determining whether a conspirator must have knowledge of the amount of the controlled substance in which he or she is trafficking.
Here the substantive offense was, in fact, completed. However, I am unaware of the law of any jurisdiction that distinguishes between the conspiracy in which an overt act has occurred, and that in which the underlying criminal offense has been completed. Therefore, in my judgment, the law set forth in this concurrence properly applies wherever there has been an overt act in furtherance of a conspiracy, without regard to whether the substantive offense has been completed.

 Marcus, supra at 2-110.

 The majority asserts that “Feola is neither directly on point nor controlling.” Although I agree that Feola is not dispositive, I nevertheless believe, as stated supra at 650, that the principles applied in general federal conspiracy cases are highly persuasive in our resolution of this type of controversy. In particular, Feola is instructive because of the substantial similarities of the substantive and conspiracy statutes in these cases. Further, I am aware of no federal or state case law, before or after Apprendi, which has deviated from these federal conspiracy principles. See, e.g., State v Aviles-Alvarez, 561 NW2d 523 (Minn App, 1997) (holding that “[w]hile the amount is an essential element of the crime, the defendant’s knowledge of the amount is not an essential element”).
The majority also asserts that, if the Feola Court held that knowledge of the federal officer’s identity was an element of the substantive offense, this would have led to a dismissal of the federal charges, and that “[w]e do not face such a situation” in the instant case. Whether or not the charges would have been dismissed was of no relevance to the Feola holding, nor is it of apparent relevance to the instant holding. Instead, the Court in Feola, as this concurrence does today, grounded its decision in *653 the plain language of the substantive and the conspiracy statutes, as well as in the purposes underlying criminal conspiracy law.

 The majority asserts that I “fail[] to appreciate the fact that in Michigan, pursuant to our statute, the amount of a controlled substance is part of a delivery offense ....’’ See ante at 626, n 15.1 respectfully disagree. As stated supra at 654-655,1 believe that the relevant element of the deliv *657 ery offense concerns the amount, not knowledge of the amount, of a controlled substance, and that this former element must be proved beyond a reasonable doubt by the prosecutor.

 Interestingly, the majority uses a similar analysis to Feola in its discussion concerning the sufficiency of evidence necessary for defendant’s aiding and abetting conviction. Defendant argued that, under the aiding and abetting statute, the prosecutor must show sufficient evidence that defendant “intended the crime of delivery of at least 225 grams of cocaine or had knowledge [that coconspirator] Blaclcstone intended to deliver at least 225 grams of cocaine at the time he aided the delivery,” not merely sufficient evidence that defendant intended a cocaine delivery. Ante at 627. After reviewing the statute, the majority holds that the requisite intent for a conviction under the aiding and abetting statute “is that necessary to be convicted of the crime as a principal.” Id. at 628. Applying this standard, the majority finds that “it was enough for the prosecution to show that Mass, as with the principal offender Blackstone, knowingly delivered or aided in the delivery of some amount of cocaine, as long as the jury later determined that at least 225 grams of cocaine were in fact delivered. The prosecution simply did not need to show that defendant knew that the amount of cocaine involved in the instant delivery was at least 225 grams to secure . . . Mass’ conviction for aiding and abetting in the delivery of at least 225, but less than 650, grams of cocaine. Convic *661 tion of a crime as an aider and abettor does not require a higher level of intent with regard to the commission of the crime than that required for conviction as a principal.” Id. at 628. In my judgment, the same reasoning holds true for conviction on a conspiracy to deliver offense.

 Indeed, in this case, the offense was carried out to completion, although any overt act would have been legally sufficient to demonstrate the imminence, or the “clear and present” nature, of the threat to the social order.

 The majority believes that maintaining convictions for conspiracy to deliver less than 50 grams of a controlled substance affords a “significant disincentive” to engage in drug trafficking involving larger amounts. Ante at 645. However, it is not this Court’s role to determine what is or is not a “significant disincentive” for particular conduct; that is the Legislature’s role. And the Legislature has determined in MCL 333.7401 that the appropriate disincentives for larger-scale drug trafficking are those set forth in that statute. This Court’s duty is to respect this determination.

 Again, although Michigan statutory law allows for the prosecution of drug conspiracies where the evidence shows that the conspirators have merely agreed to commit an offense prohibited by law, without an overt act, MCL 750.157a, this is not the case before us — indeed, it is rarely the case before us — and this concurrence takes no position with regard to the need for a conspirator to have knowledge of the specific amount of drugs in such “pure” Michigan conspiracies.