*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

LEROY WILLIAMS,

      Defendant-Appellee.

UNPUBLISHED
May 28, 2020

No. 347358
Wayne Circuit Court
LC No. 18-006845-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

DAVID ARNOLD CLIFFORD,

      Defendant-Appellee.

No. 349359
Wayne Circuit Court
LC No. 18-006845-01-FC

---

Before: JANSEN, P.J., and METER and CAMERON, JJ.

PER CURIAM.

In Docket No. 347358, the prosecution appeals as of right the circuit court's order dismissing defendant Leroy Williams's charges of first-degree premeditated murder, MCL 750.316(1)(a), and conspiracy to commit first-degree murder, MCL 750.157a. The prosecution also argues on appeal that the circuit court abused its discretion when it did not allow the prosecutor to amend the felony information to reinstate the charge of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b, against Williams. We affirm.

In Docket No. 349359, the prosecution appeals by delayed leave granted[1] the circuit court's order dismissing defendant David Arnold Clifford's charges of first-degree premeditated murder and conspiracy to commit first-degree murder. The prosecution also argues on appeal that the circuit court abused its discretion when it did not allow the prosecutor to amend the felony information to reinstate the charge of identity theft, MCL 445.65, against Clifford. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of the shooting death of the decedent on May 28, 2014. The decedent, who was 27 years old and was cognitively delayed, resided with Clifford at all relevant times. On May 2, 2013, a $250,000 life insurance policy was issued to the decedent. Clifford was listed as the beneficiary. The monthly premium payments were paid from the decedent's bank account, to which Clifford was the representative payee.

On the evening of the murder, the decedent was seen walking around the parking lot of a liquor store while talking on a cellular telephone. Telephone records reveal that, at 10:10 p.m., the decedent called Clifford, who then returned the decedent's call at 10:13 p.m. Also at 10:13 p.m., Vaughn Robinson received a telephone call from Clifford. Robinson then called Darren Hannah.[2] Two witnesses who were sitting outside of the liquor store observed the decedent speaking on his cellular telephone before going to the corner of the store, crossing one street, and then walking down another street. One minute later, the witnesses heard four to six gunshots and went to investigate. The witnesses found the decedent, who had been shot, lying on the ground. Two bullet fragments were recovered from the scene of the shooting, along with the decedent's two cellular telephones, Bluetooth headset, and wallet. An unknown individual called 911 at 10:21 p.m. At 10:47 p.m., Clifford received a telephone call from Robinson.

On June 27, 2014, Detroit Police Officers Robert Skender and Shawn Mortier stopped Hannah's vehicle, in which Williams was a passenger, because he was not wearing a seatbelt. Officer Skender arrested Hannah for driving without a driver's license. Officer Mortier asked Williams to step out of the vehicle, and it was discovered that Williams had a box of ammunition in his pocket. Officer Skender searched the trunk of the vehicle and recovered a gun. Williams admitted that he owned the gun, and testing of the gun revealed that it matched a bullet fragment found at the murder scene.

In Docket No. 347358, Williams was charged with first-degree premeditated murder, conspiracy to commit first-degree murder, and felony-firearm. In Docket No. 349359, Clifford was charged with first-degree premeditated murder, conspiracy to commit first-degree murder,

---

[1] *People v Clifford*, unpublished order of the Court of Appeals, entered September 23, 2019 (Docket No. 349359).

[2] Robinson and Hannah were codefendants in this case. Their charges were dismissed, but they are not parties to this appeal.

identity theft, possession of a firearm by a felon ("felon-in-possession"), MCL 750.224f, and felony-firearm.[3]

Following a preliminary examination, the district court bound Williams over on the charges of first-degree murder and conspiracy to commit first-degree murder, but dismissed the charge of felony-firearm. Clifford was bound over on the charges of first-degree murder, conspiracy to commit first-degree murder, felon-in-possession, and felony-firearm, but the district court dismissed the charge of identity theft. Once Williams and Clifford were bound over to circuit court, Williams filed a motion to quash, which Clifford joined. The prosecutor also filed a motion to amend the felony information to reinstate the charges against Williams and Clifford that the district court had dismissed. The circuit court determined that there was insufficient evidence to support the murder-related charges. Therefore, the circuit court dismissed all of the charges against Williams and dismissed the murder-related charges against Clifford.[4] These appeals followed.

## II. DISCUSSION

The prosecution argues that the circuit court erred when it determined there was insufficient evidence to support Williams's and Clifford's bindovers with respect to the murder-related charges, and that the circuit court abused its discretion when it denied the prosecutor's motion to reinstate the charges against Williams and Clifford.

## A. BINDOVER OF WILLIAMS (DOCKET NO. 347358)

The prosecution argues that there was sufficient evidence to establish probable cause that Williams committed first-degree murder and conspiracy to commit first-degree murder. We disagree.

A district court's bindover decision regarding the sufficiency of the evidence is reviewed for an abuse of discretion. *People v Flick*, 487 Mich 1, 9; 790 NW2d 295 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). "In reviewing the bindover decision, a circuit court must consider the entire record of the preliminary examination and may not substitute its judgment for that of the district court." *People v Henderson*, 282 Mich App 307, 312-313; 765 NW2d 619 (2009). "Because the legal issue presented is whether the magistrate abused his or her discretion, this Court gives no deference to the circuit court's decision regarding a motion to quash a bindover order." *People v Harlan*, 258 Mich App 137, 145; 669 NW2d 872 (2003).

"The purpose of the preliminary examination is to determine whether 'a felony has been committed and [whether] there is probable cause for charging the defendant therewith[.]' " *People*

---

[3] Law enforcement located a shotgun during a search of Clifford's residence. The shotgun was not found to be associated with the murder.

[4] Although the orders entered by the circuit court did not address the prosecutor's motions to amend the information to reinstate the charges against Clifford and Williams, we will nonetheless address these issues on appeal. See MCR 7.216(A)(7).

-3-

*v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010), citing MCL 766.13 (alteration in original). "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted). If probable cause exists, the district court must bind the defendant over to the circuit court. *Plunkett*, 485 Mich at 57. "The preliminary examination thus serves the public policy of ceasing judicial proceedings where there is a lack of evidence." *People v Hunt*, 442 Mich 359, 362; 501 NW2d 151 (1993).

At the outset, we note that the prosecution improperly attempts to use certain statements that a witness made to the police as substantive evidence. The witness, who was at the liquor store the night of the murder, told the police that he had heard the decedent say, "I'm coming around the corner now." He also told the police that he had seen two black men running from the area just after he heard shots being fired. However, those prior statements only came out during the preliminary examination because the witness denied that he had heard the decedent say anything while he was on the telephone, or that he had seen anyone running away from the area of the murder. The prosecutor then attempted to impeach the witness with his prior statements in his police statement. Such prior unsworn statements of a witness are hearsay, and therefore are generally inadmissible as substantive evidence. *People v Jenkins*, 450 Mich 249, 261-262; 537 NW2d 828 (1995). "[A] prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial." *People v Stanaway*, 446 Mich 643, 693; 521 NW2d 557 (1994). In this case, the prosecutor attempted to impeach the witness with his prior inconsistent statements, and now attempts to use that impeachment evidence as substantive evidence on appeal. This is an improper use of impeachment evidence, and we will not consider the evidence as substantive evidence.

Regarding Williams's charge of first-degree murder, the prosecutor was required to establish that there was probable cause that Williams intentionally killed the decedent with premeditation and deliberation. MCL 750.316(1)(a); *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Morrin*, 31 Mich App 301, 329; 187 NW2d 434 (1971) (citations omitted). Williams also could have been bound over as an aider or abettor. "A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense." *People v Bosca*, 310 Mich App 1, 20-21; 871 NW2d 307 (2015) (quotation marks and citation omitted).

> To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (quotation marks and citation omitted).]

The prosecution argues that sufficient evidence was presented that supports "an inference that the victim's death was orchestrated, premeditatedly, by [Clifford], and one of the weapons used [in the murder] was provided by [Williams]." This assertion illustrates that the main evidence

connecting Williams to the murder is Williams's ownership of the gun associated with the murder, and his possession of the gun 30 days after the murder. Williams admitted that he had purchased the gun "off the street" sometime before the murder, and that he typically kept the gun buried by a vacant house. However, there was no evidence admitted at the preliminary examination about who was in actual possession of Williams's gun at the time of the murder. Indeed, the prosecution does not assert that Williams was one of the shooters. Rather, the prosecution asserts there was sufficient evidence that Williams knowingly "provided" his gun to kill the decedent. We disagree.

The prosecution's theory is that Clifford orchestrated and planned the decedent's murder based on his connection to the decedent's bank account and life insurance policy, as well as various telephone calls that he made and received in the time leading up to the decedent's murder. Despite the fact that evidence was not introduced to support that Williams was aware of the bank account or life insurance policy, the prosecutor introduced evidence of telephone records to support the argument that the murder was premeditated. The telephone records established the following time line for the night of the murder:

| | |
|---|---|
| 9:45 p.m. | Clifford called Robinson |
| 10:10 p.m. | The decedent called Clifford |
| 10:13 p.m. | Clifford called the decedent |
| 10:13 p.m. | Robinson called Clifford |
| 10:13 p.m. | Clifford called Robinson |
| 10:13 p.m. | Robinson called Hannah |
| 10:21 p.m. | 911 call regarding the decedent's murder |
| 10:47 p.m. | Robinson called Clifford. |

The prosecution does not argue that Williams made or received any telephone calls on the night of the murder or that Williams and Clifford were acquainted. At the preliminary examination and when defending Williams's motion to quash in the circuit court, the prosecutor attempted to indirectly connect Williams to Clifford, Robinson, and Hannah and, in doing so, attempted to link Williams circumstantially to the planning of the murder. Specifically, the prosecutor relied on the fact that Williams was a passenger in Hannah's motor vehicle 30 days after the murder, that Hannah is Robinson's grandson, and that Robinson and Clifford worked together. However, the prosecutor failed to show that Williams knowingly "provided" his gun to another for the purpose of committing murder.[5] Instead, the prosecutor merely put forth evidence that Williams and

---

[5] Preliminarily, the prosecution does not identify the person to whom Williams gave his gun. At the time the trial court decided the motions to quash, only Clifford, Williams, and Robinson were charged with the shooting. After the trial court granted the motions to quash, the charges against Robinson were dismissed.

Hannah were together 30 days after the murder and that Hannah was related to Robinson, who knew Clifford.

Additionally, the record is devoid of evidence that Williams communicated with Hannah, Clifford, or Robinson before the murder occurred. Instead, the prosecution relies on evidence that Williams and Robinson communicated over 30 days *after* the murder occurred to support that Williams was involved in the planning of the murder. Specifically, the prosecution points to telephone records that support that Williams and Robinson called one another in the two days before Williams pleaded guilty to a weapon-related charge that was issued as a result of the gun found during the traffic stop. Although Robinson only called Williams four times and Williams called Robinson once,[6] the prosecution asserts that these calls, along with the series of other telephone calls between Robinson, Hannah, and Clifford, "allow for the inference that an agreement existed between [Williams] and the others to commit the unlawful act of first-degree premeditated murder." We conclude that this tenuous inference, combined with insufficient evidence concerning Williams's role in the murder, is insufficient to establish probable cause that Williams premeditated and deliberately killed the decedent. We fail to see how these telephone calls demonstrate that Williams was part of a plan formed months earlier to murder the decedent or show that Williams had provided his gun to Robinson (whose charges were dismissed) or to Clifford for the purpose of committing murder. Thus, the district court abused its discretion when it bound over Williams on the charge of first-degree murder.

The prosecution next argues that the district court did not abuse its discretion when it bound over Williams on the charge of conspiracy to commit first-degree murder.

> A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense. The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement. The intent, including knowledge of the intent, must be shared by the individuals. Thus, there must be proof showing that the parties specifically intended to further, promote, advance, or pursue an unlawful objective. Direct proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties. [*People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (quotation marks and citations omitted).]

The prosecution argues that there was sufficient evidence to find probable cause that Williams conspired to murder the decedent because Clifford was aware of the decedent's bank account and life insurance policy, because of the various telephone calls the night of the murder, and because of the telephone calls between Williams and Robinson in the two days before Williams pleaded guilty to the weapon-related charge. We conclude that this evidence does not

---

[6] It is unclear whether a conversation took place for the majority of these telephone calls because the duration of three of the telephone calls was 10 seconds or less. The other two calls were 51 and 57 seconds in duration.

create a reasonable inference to establish probable cause that Williams was part of a plan to murder the decedent.

There is no evidence that Williams knew about the bank account or the life insurance policy, or that he received any of the money therefrom. Furthermore, as already discussed, no evidence supports that Williams was contacted by telephone on the night of the murder, and the inference that Robinson contacted Williams because Robinson knew that Williams planned to plead guilty to a crime that related to the alleged murder weapon is entirely tenuous. Because there was insufficient evidence to establish probable cause that Williams was part of a plan to murder the decedent, we conclude that the district court abused its discretion when it bound over Williams on the charge of conspiracy to commit first-degree murder.

B. REINSTATEMENT OF WILLIAMS'S CHARGE (DOCKET NO. 347358)

The prosecution argues that the circuit court abused its discretion when it denied the prosecutor's motion to amend the felony information to reinstate the felony-firearm charge against Williams. We disagree. "A trial court's decision to grant or deny a motion to amend an information is reviewed for an abuse of discretion." *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). The interpretation of a statute or court rule is a question of law subject to de novo review. *Id*. at 686.

"Both MCL 767.76 and MCR 6.112(H) authorize a trial court to amend an information before, during, or after trial." *McGee*, 258 Mich App at 686. A trial court may allow the prosecution to amend the felony information unless "amendment would unduly prejudice the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend." *People v Goecke*, 457 Mich 442, 462; 579 NW2d 868 (1998) (quotation marks and citation omitted). "Where a preliminary examination is held on the very charge that the prosecution seeks to have reinstated, the defendant is not unfairly surprised or deprived of adequate notice or a sufficient opportunity to defend at trial . . . ." *Id*.

In this case, the district court held a preliminary examination involving Williams's charge of felony-firearm, and ultimately dismissed the charge. Once Williams was bound over to the circuit court, the prosecutor moved to amend the felony information to reinstate the felony-firearm charge. The circuit court determined, however, that there was insufficient evidence to support Williams's bindover on the first-degree murder charge, and therefore, there was insufficient evidence to support the felony-firearm charge. This was not an abuse of discretion.

Under the plain language of the felony-firearm statute, a predicate felony conviction is required to sustain a felony-firearm conviction. *People v Coleman*, 327 Mich App 430, 441; 937 NW2d 372 (2019). As discussed in section II(A), there was insufficient evidence to establish probable cause that Williams used the gun to murder the decedent. Without a first-degree murder charge, there is no predicate felony for a felony-firearm charge. Consequently, we conclude that the circuit court did not abuse its discretion by denying the prosecutor's motion to reinstate the charge of felony-firearm against Williams. See *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003) (holding that the elements of felony-firearm are possession of "a firearm during the commission of, or the attempt to commit, a felony") (quotation marks and citation omitted).

## C. JUDICIAL REASSIGNMENT (DOCKET NO. 347358)

The prosecution argues that, if this Court remands the case to the circuit court, it should be reassigned to a different circuit court judge because the judge's comments regarding the case against Williams demonstrate her bias against the prosecutor's case. Because we conclude that the circuit court properly dismissed the murder-related charges against Williams and did not abuse its discretion when it denied the prosecutor's motion to amend the information, it is not necessary to consider this argument.

## D. BINDOVER OF CLIFFORD (DOCKET NO. 349359)

The prosecution argues that there was sufficient evidence to establish probable cause to bind over Clifford on the charges of first-degree murder and conspiracy to commit first-degree murder. We agree.

At the outset, we note that Clifford argues that the State of Michigan Forensic Science Division report regarding the bullet fragments found at the murder scene lacked the necessary foundation to be introduced at the preliminary examination and that, even with a proper foundation, the report was contradictory and ambiguous. We disagree. The report was not excluded by the rules of hearsay and did not require establishment of any foundation for purposes of the preliminary examination. MCL 766.11b(1)(d) states:

> The rules of evidence apply at the preliminary examination except that the following are not excluded by the rule against hearsay and shall be admissible at the preliminary examination without requiring the testimony of the author of the report, keeper of the records, or any additional foundation or authentication. . . . Except for the police investigative report, a report prepared by a law enforcement officer or other public agency. Reports permitted under this subdivision include, but are not limited to, a report of the findings of a technician of the division of the department of state police concerned with forensic science, a laboratory report, a medical report, a report of an arson investigator, and an autopsy report.

Thus, the report was admissible at the preliminary examination under MCL 766.11b(1)(d), and any alleged issues pertaining to the contradictory and ambiguous nature of the report went to the credibility and weight of the report. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Because it is the duty of the district court to "pass judgment . . . on the weight and competency of the evidence," *People v Anderson*, 501 Mich 175, 184; 912 NW2d 503 (2018), quoting *People v Paille #2*, 383 Mich 621, 627; 178 NW2d 465 (1970), Clifford's argument concerning the report is unavailing.[7]

---

[7] Clifford also argues that the prosecution is improperly attempting to use the prosecutor's questions at the preliminary examination as substantive evidence on appeal. We addressed this issue when we discussed the prosecutor's efforts to impeach the witness with his prior statements made to the police. As noted earlier, the prosecutor's statements and questions are not considered

With respect to whether the district court abused its discretion by binding Clifford over on the charge of first-degree murder, the prosecutor was required to establish probable cause that Clifford intentionally killed the decedent with premeditation and deliberation. MCL 750.316(1)(a); *Oros*, 502 Mich at 240. "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Morrin*, 31 Mich App at 329. Clifford also could have been bound over for aiding and abetting the crime of first-degree murder. "A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense." *Bosca*, 310 Mich App at 20-21.

> To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*Izarraras-Placante*, 246 Mich App at 495-496.]

The prosecutor submitted evidence to show that the decedent contacted Clifford the night of the murder. As stated in section II(A), the relevant time line of telephone calls is as follows:

| | |
|---|---|
| 9:45 p.m. | Clifford called Robinson |
| 10:10 p.m. | The decedent called Clifford |
| 10:13 p.m. | Clifford called the decedent |
| 10:13 p.m. | Robinson called Clifford |
| 10:13 p.m. | Clifford called Robinson |
| 10:13 p.m. | Robinson called Hannah |
| 10:21 p.m. | 911 call regarding the decedent's murder |
| 10:47 p.m. | Robinson called Clifford. |

---

as part of this Court's review. Additionally, Clifford argues that Williams's statement that he owned the gun and that he pleaded guilty to a charge in relation to the gun are not admissible against Clifford for purposes of establishing that he either aided and abetted or conspired with Williams to murder the decedent. Because we concluded that there was insufficient evidence to link Williams to the murder, we will not consider Williams's admissions and guilty plea when deciding whether the district court abused its discretion by binding Clifford over on the murder-related charges.

When interviewed by law enforcement on July 30, 2014, Clifford claimed that, with the exception of going around the corner to the store, he was at home on the night of the murder. However, Clifford's telephone location data establishes that Clifford's cellular telephone was in the vicinity of the murder. Evidence supports that Clifford never let anyone use his cellular telephone, and Clifford admitted that the decedent contacted him a short period of time before the murder occurred and asked Clifford to pick him up. Clifford indicated that he refused to do so because it was "so late." However, when Clifford spoke to the decedent at 10:13 p.m., Clifford's cellular telephone was in the vicinity of the homicide scene. Instead of taking steps to pick up the decedent, Clifford immediately called Robinson and the decedent was murdered less than 10 minutes later. Thus, a person of ordinary prudence and caution could conscientiously entertain a reasonable belief that Clifford declined to pick up the decedent so that he could communicate the decedent's location to Robinson so as to facilitate the murder.[8] Indeed, after the 911 call was made at 10:21 p.m., Clifford's cellular telephone began utilizing towers near his home, thereby supporting that Clifford returned home after the murder was completed.

It is also reasonable to believe that Clifford intended for the decedent to be murdered on the basis of the various telephone calls on the night of the murder. Although Clifford argues that the number of telephone calls between him and Robinson were not suspicious because he was friends with Robinson, the prosecutor presented evidence concerning the increased volume of calls in the time leading up to the murder. Specifically, on May 27, 2014, there were eight telephone calls between the cellular telephones associated with Robinson and Clifford. On May 28, 2014, the day of the murder, there were 17 telephone calls and one text message. In the three days that followed the murder, there were only four calls, five calls, and eight calls, respectively. Evidence also supports that the number of telephone calls between the cellular telephones associated with Hannah and Robinson increased considerably on the date of the murder. Specifically, on the date of the murder, 24 telephone calls were made and two text messages were sent. In contrast, on May 27, 2014, only three telephone calls were made. In the two days following the murder, eight telephone calls and five telephone calls were made, respectively. Text messages were only sent on the date of the murder. Consequently, the record evidence supports that the amount of communication between Robinson and Clifford, and between Robinson and Hannah, increased dramatically on the date of the murder and that some of the telephone calls were made within minutes of the murder. Although there could have been an innocent reason for the numerous telephone calls given Robinson's relationships with Clifford and Hannah, the prosecutor was not required to negate every reasonable theory consistent with Clifford's innocence. See *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002).

The prosecutor also presented evidence that Clifford had a motive to kill the decedent. "Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant. In cases in which the proofs are circumstantial, evidence of motive is

---

[8] We note that Clifford argues that the cellular tower data undermined the prosecution's theory that Clifford aided and abetted the decedent's murder because he would not have had to call Robinson if he was in the area of the murder. In addition to this argument being purely speculative, the prosecutor was not required to rebut every reasonable theory of Clifford's innocence. *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002).

particularly relevant." *Unger*, 278 Mich App at 223 (citations omitted). In this case, the prosecutor presented evidence that Clifford orchestrated and planned the decedent's murder based on his connection to the decedent's bank account and life insurance policy. The prosecutor asserted that Clifford had applied for the decedent's life insurance policy when the decedent was 25 years old and had named himself as the beneficiary of the $250,000 policy. Indeed, less than three months after the murder, Clifford sought to collect the proceeds from the life insurance policy. Clifford was also a payee on the decedent's bank account, and evidence supports that the decedent did not have control of his bank account. Specifically, the prosecutor highlighted purchases that "a cognitively impaired grown man in his mid-twenties" should not need, such as a prom dress and a payment to a funeral home. The monthly premium payments for the life insurance policy were also paid from this bank account. Importantly, the evidence does not support that the decedent was shot in the course of a robbery given that he was found with his wallet, cellular telephones, and Bluetooth headset. The increased amount of communication on the date of the murder, together with the fact that Clifford lied about his location to the police, the fact that Clifford was aware of the decedent's location, and evidence that Clifford had a motive to murder the decedent, are sufficient to establish the probable cause necessary to bind over Clifford on the charge of first-degree murder. While we acknowledge that Clifford's arguments on appeal could cast doubt regarding his guilt, a magistrate may not decline to bind over a defendant where there is a "reasonable doubt as to his guilt." See *Yost*, 468 Mich at 128. "[F]inding guilt beyond a reasonable doubt is the province of the jury." See *id*. at 126.

The same facts support that there was probable cause to bind over Clifford on the charge of conspiracy to commit first-degree murder. Evidence of the various telephone calls between Clifford and Robinson support that Clifford was communicating a plan to kill the decedent by telling Robinson the decedent's location. Although Clifford argues that there was insufficient evidence to support the bindover for conspiracy to commit first-degree murder because there was no evidence that Clifford ever spoke with Hannah, it was not necessary that Clifford speak with Hannah to establish a conspiracy. Indeed, a conspiracy could exist where all of the individuals who were a part of the conspiracy shared the knowledge of the conspiracy. *People v Meredith*, 209 Mich App 403, 412-413; 531 NW2d 749 (1995). Thus, it was not necessary for the prosecutor to establish that Clifford communicated directly with all of the members of the conspiracy. We conclude that the district court acted within its discretion when it found that there was probable cause to bind over Clifford on the charges of first-degree murder and conspiracy to commit first-degree murder.

### E. REINSTATEMENT OF CLIFFORD'S CHARGE (DOCKET NO. 349359)

The prosecution next argues that the circuit court abused its discretion when it did not allow the prosecutor to amend the felony information to reinstate the charge of identity theft against Clifford. We agree in part.

Because the charge of identity theft was addressed at the preliminary examination, Clifford was not unduly prejudiced by the prosecutor's request to reinstate that charge, see *Goecke*, 457 Mich at 462, and we must consider whether there was sufficient evidence to establish probable cause that Clifford committed identity theft. For purposes of the preliminary examination, the prosecutor was required to establish probable cause that Clifford (1) used the decedent's personal

identifying information, (2) to obtain goods, services, or money, (3) with the intent to defraud. MCL 445.65(1)(a)(*i*); *People v Miller*, 326 Mich App 719, 728; 929 NW2d 821 (2019).

The prosecution argues that Clifford committed identity theft when he used the decedent's identifying information to apply for a life insurance policy. While the prosecution asserts that the decedent did not have the intellectual ability to apply for the life insurance policy himself and, therefore, Clifford must have done so, there was no evidence that the application was submitted fraudulently. Although a claim consultant from American National Insurance testified that there were multiple discrepancies involving Clifford's relationship to the decedent listed throughout the application and the accompanying documents, there was no evidence that the decedent was not the individual who applied for the policy. Indeed, the claim consultant testified that, because the application for the insurance policy was submitted electronically, she had no information that anyone other than the decedent completed the application. Although the prosecution contends that the decedent's limited intellectual ability prevented him from applying for the policy, without more evidence that the decedent was not the person who submitted the application, we conclude that this inference is too tenuous to establish probable cause. Therefore, the circuit court did not abuse its discretion when it denied the prosecutor's motion to amend the felony information to reinstate the identity theft charge as it relates to the life insurance policy.

The prosecution next argues that there was evidence sufficient to establish probable cause that Clifford committed identity theft when used the decedent's bank account to make purchases for himself. It is undisputed that Clifford was named as a representative payee on the decedent's bank account. The prosecution argues that Clifford used the decedent's bank account to make unauthorized purchases, and supports this argument with evidence of purchases made for which the decedent would have no use, as well as various bank withdrawls. Examples include (a) the purchase of automobile related items from Autozone, O'Reilly Auto Parts, and gas stations; (b) purchases at a prom dress store; (c) money paid to a funeral home; (d) withdrawals at MotorCity and Greektown Casinos; and (e) withdrawals at bank locations that were signed by Clifford. The charges at gas stations could reasonably be determined to have been made by the decedent, either for the purchase of merchandise inside the gas station, or for paying Clifford gas money while Clifford drove the decedent around. The other charges, however, are out of line with the testimony regarding the decedent's character. It is unlikely that a man in his mid-20s would need to buy a prom dress, or make a purchase at a funeral home, or make purchases at an automotive parts store when there was no evidence that he owned a vehicle. Accordingly, we conclude that a person of ordinary prudence and caution could conscientiously entertain a reasonable belief that Clifford committed identity theft. See *Yost*, 468 Mich at 126. Because there was probable cause to believe that Clifford committed identity theft, the circuit court abused its discretion when it declined to amend the felony information to reinstate that charge against Clifford.

## III. CONCLUSION

In Docket No. 347358, we affirm the circuit court's decisions to dismiss Williams's charges of first-degree murder and conspiracy to commit murder and to deny the prosecutor's motion to amend the felony information to reinstate the charge of felony-firearm. In Docket No. 349359, we reverse the circuit court's decisions to dismiss Clifford's charges of first-degree murder and conspiracy to commit murder and to deny the prosecutor's motion to amend the felony

information to reinstate the charge of identity theft.  We remand for proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Patrick M. Meter
/s/ Thomas C. Cameron